**Charles SIMMONS and Roland Carmen**

v.

**ROTHE DEVELOPMENT, INC.**

Civil Action No. G–95–721.

United States District Court,
S.D. Texas,
Galveston Division.

Jan. 13, 1997.

Anthony P. Griffin, Attorney at Law, Galveston, TX, for Charles Simmons, Roland Carmen.

Phillip Weigand Bechter, Richard Austin Schwartz, Schwartz Campbell & Oathout, Houston, TX, for Rothe Development, Inc.

## ORDER

KENT, District Judge.

Plaintiffs filed this action pursuant to Title VII, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. The Court in a prior order granted summary judgment for the Defendant on Plaintiffs' Title VII claims. Now before the Court is Defendant's Second Motion for

Summary Judgment of December 11, 1996. For the reasons set forth below, the Motion is **GRANTED.**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Issues of material fact are genuine only if they require resolution by a trier of fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In other words, the Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also* Fed.R.Civ.P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont De Nemours & Co.,* 58 F.3d 193, 195 (5th Cir.1995). To meet this burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56 (quoting Fed.R.Civ.P. 56(e)). Summary judgment should be granted only if the evidence indicates that a reasonable fact-finder could not find in favor of the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

■ In its Second Motion for Summary Judgment, Defendant seeks summary judgment on Plaintiffs' section 1981 claims. Section 1981 provides in part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981(a). The phrase "make and enforce contracts" is defined to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." *Id.* § 1981(b). Section 1981 applies to contractual relationships in the employment setting and "is designed to include a federal remedy against discrimination in employment on the basis of race." *Adams v. McDougal,* 695 F.2d 104, 108 (5th Cir.1983). The Court's inquiry into intentional race discrimination under section 1981 is essentially the same as that for actions brought under Title VII. *Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir.1996); *Marcantel v. State of La. Dept. of Transp. and Dev.,* 37 F.3d 197, 198 (5th Cir.1994); *NAACP v. Medical Center, Inc.,* 657 F.2d 1322 (3d Cir.1981). The Fifth Circuit applies the burden-shifting analytic framework first established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to analyze claims of intentional discrimination.[1]

Under the familiar *McDonnell Douglas/Burdine* framework, the Court employs a three-part test designed to determine the motivation of the defendant in taking the challenged action. *McDonnell Douglas,* 411 U.S. 792, 93 S.Ct. 1817; *Burdine,* 450 U.S. 248, 101 S.Ct. 1089. First, the plaintiff is required to establish a prima facie case wherein he must establish the elements of the discrimination claim. The plaintiff may prove a prima facie case of intentional discrimination by showing (1) that he belongs to a racial minority; (2) that he applied for and was qualified for a job for which the employer was seeking applicants; (3) that he was rejected despite his qualifications; and (4) that the position remained open, and the employer continued to seek applications from persons of plaintiff's qualifications. *McDon-*

---

**1.** *McDonnell Douglas* was refined in *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and recently clarified in *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

*nell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. If the plaintiff proves her prima facie case, a presumption of discrimination arises. *Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955 (5th Cir.1993).

The burden of production then shifts to the defendant to rebut this presumption by articulating a legitimate, nondiscriminatory reason for the alleged discriminatory action. *Olitsky v. Spencer Gifts, Inc.,* 964 F.2d 1471 (5th Cir.1992), *cert. denied,* 507 U.S. 909, 113 S.Ct. 1253, 122 L.Ed.2d 652 (1993). A defendant meets this burden by proffering admissible evidence of an explanation that would be legally sufficient to justify a judgment for the defendant. *Guthrie v. Tifco Indus.,* 941 F.2d 374, 376 (5th Cir.1991), *cert. denied,* 503 U.S. 908, 112 S.Ct. 1267, 117 L.Ed.2d 495 (1992). The defendant need not *persuade* the trier of fact that there was no intentional discrimination; she need only produce evidence on that point. *Hicks,* 509 U.S. at 507, 113 S.Ct. at 2747.

Once the defendant satisfies this burden, the presumption of discrimination established by the plaintiff's prima facie case dissolves. *Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10. The plaintiff's burden of persuasion then arises, and the plaintiff must produce evidence that the defendant's proffered reasons are mere pretexts, the real reason for the action having been based on an impermissible animus. *Id.* at 256, 101 S.Ct. at 1095; *Bodenheimer,* 5 F.3d at 959. The ultimate burden of proof of intentional racial discrimination rests at all times on the plaintiff. *Hicks,* 509 U.S. at 507, 113 S.Ct. at 2749.

Plaintiff Carmen is a grade 3 engraver currently employed by Defendant and complains of racial discrimination in employment on the basis of two incidents. Carmen complains that in 1993, a white female employee, Ruth Webb, was moved from a labor grade 2 to a labor grade 3 and given a raise of $.75 an hour, and he was given neither a grade nor a salary increase. The second incident of which Carmen complains occurred in 1994 when he was given a verbal warning because of an engraving error he made that resulted in the client complaining and the work having to be redone. Carmen alleges that the discipline he received was different from that received by nonminority workers.

■ As to Carmen's first claim involving disparate pay, the Court finds that he has failed to establish a prima facie case of intentional racial discrimination. Plaintiff Carmen compares himself to Ruth Webb, a white female who was given a labor grade raise and a salary increase in 1993. The Court finds, however, that Plaintiff Carmen's comparison of himself to Ruth Webb is misplaced because they are not in similar positions within the company nor do they have similar responsibilities or duties. Plaintiff Carmen is employed in the Engraving Department as an Engraver, and Ruth Webb is employed in the Fabrication Department as a Fabricator/Wireman. Moreover, it appears from the record that Ruth Webb's grade and salary promotion was the result of negotiations during collective bargaining that resulted in some restructuring in the Fabrication Department. It was negotiated that the position of Lead Fabricator (grade 3) and the position of Fabricator/Wireman (grade 2) would be consolidated into one position, that of Fabricator/Wireman at a grade level of 3. At this time, a white female, Shirley Schneider, held the position of Lead Fabricator. Her "lead" designation was removed, and she remained at the same grade and salary level. Ruth Webb, however, received a grade and salary increase in line with the newly created position. Moreover, Ruth Webb's $.75 an hour raise brought her salary up to that of Plaintiff Carmen. Carmen had received a non-union $.75 an hour salary increase that was effective in August 1992, and Ruth Webb did not receive a raise at that time. Thus it appears that even if Plaintiff Carmen could compare himself to Ruth Webb, the raise she got in 1993 was the same one that he had earlier received in 1992. The fact is that is that as of June, 1996, Plaintiff and Ruth Webb were receiving exactly the same salary. For the reasons set forth above, the Court finds that Plaintiff Carmen has failed to establish a prima facie case of discrimination in pay.

■ Even if Plaintiff Carmen could establish a prima facie case of discrimination, Defendant has met its burden in showing a

legitimate nondiscriminatory reason for the pay differential. Defendant has shown that Ruth Webb is in a different department and holds a different position and that her raise was the result of labor negotiations and restructuring of her department. Plaintiffs failed to file a Response to Defendant's Second Motion for Summary Judgment, and thus there is no evidence presented by Plaintiff Carmen that these reasons are mere pretext. Therefore, Plaintiff Carmen's section 1981 claim for disparate pay fails as a matter of law.

■ Plaintiff Carmen's second section 1981 claim is based on an allegation of disparate discipline. Specifically, he complains about a verbal warning he received at the end of July, 1994 for an engraving error he made. Prior to this engraving error, Plaintiff had committed another engraving error three weeks before. At the beginning of July, Plaintiff Carmen had incorrectly engraved some parts, and a white male machinist, Lyle Gurnsey, had also incorrectly machined the parts. Defendant's client did not complain about the parts, and neither Plaintiff Carmen nor Mr. Gurnsey received any disciplinary action against them. At the end of July, however, Plaintiff Carmen incorrectly engraved some other parts that resulted in the parts having to be remanufactured, an apparently expensive process. Defendant's client, NASA, learned of the mistake and requested an investigation and report about the incident. As a result of the second error, Plaintiff Carmen received a verbal warning about both engraving errors that suggested he take more time in doing his work and not let any outside distractions interfere with his concentration. Plaintiff Carmen responded to this warning by acknowledging that it was his fault that the engraving was incorrectly done. He disagreed, however, with the procedures for writing up the error and denied that it was outside distractions that caused the error. Plaintiff Carmen received no other disciplinary action in the next year, and according to the terms of the labor agreement, the warning was removed from his file in July, 1995. Plaintiff Carmen was not terminated or suspended from his job as a result of this incident, and Plaintiff admitted

in his deposition that he suffered no monetary loss as a result of the discipline.

■ Plaintiff Carmen's complaint as it relates to this incident is that Mr. Gurnsey, a white male, was not disciplined for his role in the first error and that other white employees have not received the same kind of discipline. In work-rule violation cases, a plaintiff may establish a prima facie case by showing " 'either that he did not violate the rule or that, if he did, white employees who engaged in similar acts were not punished similarly.' " *Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1090 (5th Cir.1995) (quoting *Green v. Armstrong Rubber Co.,* 612 F.2d 967, 968 (5th Cir.), *cert. denied,* 449 U.S. 879, 101 S.Ct. 227, 66 L.Ed.2d 102 (1980)). Plaintiff Carmen admitted that he incorrectly engraved the parts and thus violated a work rule, so he must show that white employees who committed similar errors were not similarly disciplined. To establish a prima facie case in this manner, a plaintiff must show "that white employees were treated differently under circumstances 'nearly identical' to his." *Id.* The Court finds that Plaintiff Carmen cannot compare himself to Mr. Gurnsey because his situation was not "nearly identical" to that of Plaintiff Carmen. Mr. Gurnsey was involved only in the first incident and committed an error that did not result in the remanufacture of parts or in the client's complaining. Plaintiff Carmen, on the other hand, committed two errors within three weeks, the second of which resulted in an expensive remanufacturing process and caused the client to demand an investigation and report. Plaintiff Carmen and Mr. Gurnsey's situations are obviously not "nearly identical." Because Plaintiff did not respond to Defendant's Motion, the Court has no other evidence of any other disciplinary events that show disparate discipline. Plaintiff has only made generalized allegations that white workers are not disciplined in the same manner as minority workers. These vague allegations are insufficient, and the Court finds that Plaintiff Carmen has failed to establish a prima facie case of discrimination through disparate discipline.

■ Even if Plaintiff Carmen could establish a prima facie case of disparate discipline, Defendant has presented sufficient evidence of a nondiscriminatory reason for his discipline. Namely, Plaintiff Carmen committed two errors in three weeks, the latter of which was very costly and caused the client to complain. Plaintiff has presented no evidence whatsoever that these reasons are mere pretexts because Plaintiff did not respond to Defendant's Motion. Therefore, all of Plaintiff Carmen's section 1981 claims are **DISMISSED WITH PREJUDICE.**

Like Plaintiff Carmen, Plaintiff Simmons has two chief incidents that he claims violate section 1981. Plaintiff Simmons complains that in 1990, he was not promoted from the position of Junior Painter to Painter and that the Painter position was instead awarded to a white male. Plaintiff Simmons also complains that in 1993 when he was moved to the position of Painter, he did not receive a salary increase.

■ The Court finds that Plaintiff Simmons's section 1981 claims fail for several reasons. First, they are time-barred. The Fifth Circuit has consistently applied the Texas two-year limitations period for personal injury torts to section 1981 actions. *Price v. Digital Equip. Corp.*, 846 F.2d 1026, 1028 (5th Cir.1988). The first incident of which Plaintiff Simmons complains, the failure to promote, occurred in 1990. The second incident, the failure to receive a wage and grade increase, happened in September 1993. The present case was filed on November 7, 1995. Thus, both incidents occurred over two years before the case was filed, making the claims based on these incidents time-barred.

■ Even if Plaintiff Simmons's claims were not time-barred, they would fail as a matter of law. Plaintiff Simmons's failure to promote claim is based on the fact that he was not promoted to the position of Painter. At the time he applied for the position, however, he had only nine months experience as a Junior Painter, and prior to his hiring by Defendant in 1987 had no prior painting experience. The position of Painter required the qualifications of a high school education or equivalent and preferred five years experience in all phases of spray, brush, and roller painting. John Dukes, a white male with eleven years of experience in the painting field, was hired for the Painter position. Plaintiff Simmons filed a grievance as a result of the hiring of John Dukes. The grievance went to arbitration and the arbitrator found that Plaintiff Simmons did not meet the requirements of the position and that John Dukes was qualified and highly recommended for the position. The Court finds that Plaintiff Simmons was not qualified for the position of Painter when he applied in 1990 and that he has failed to establish a prima facie case of discrimination regarding this incident. Moreover, Defendant has showed a nondiscriminatory reason for why he was not awarded the job, that he was not qualified, and Plaintiff Simmons has failed to show that this reason was mere pretext.

■ Plaintiff Simmons's claim for disparate pay arises from the fact that when he was moved from Junior Painter to Painter in 1993, he was not given a salary increase. John Dukes left his position as Painter in 1992, and the position was not filled as of June, 1993. Plaintiff Simmons filed a grievance over the fact that Defendant had not filled the position. His grievance was settled, and as part of the settlement, it was agreed that Plaintiff Simmons would move to the Painter position and be raised to grade 4 but not be given a pay increase. Defendant asserts that Plaintiff Simmons had recently received a non-union raise and that his salary was within the range for grade level 4. Moreover, Plaintiff Simmons's job responsibilities did not change with his move to Painter. The Court sees no evidence of discrimination in this set of facts. Plaintiff Simmons claims, however, that white employees received preferential pay treatment. The employees he identifies in his deposition, however, do not have jobs similar to his, including an inventory control clerk who later became a machinist, a welder, a sheet metal worker, and an electronics worker. They do not have similar job duties or responsibilities. Thus, they are impermissible bases of comparison. The Court finds that Plaintiff Simmons has failed to establish a prima facie case of discrimination in pay.

As with the other claims in this case, even if Plaintiff Simmons could establish a prima facie case, Defendant has presented legitimate nondiscriminatory reasons for any pay disparity, and Plaintiff has failed to show that these reasons were mere pretexts because he offered no response to Defendant's Motion. Therefore, all of Plaintiff Simmons's section 1981 claims are **DISMISSED WITH PREJUDICE.**

For the reasons set forth above, Defendant's Second Motion for Summary Judgment is **GRANTED.** Each and every claim by both Plaintiffs are **DISMISSED WITH PREJUDICE.** The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are also **ORDERED** to file nothing further on these issues in this Court, including motions to reconsider and the like. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**

### *FINAL JUDGMENT*

For the reasons set forth in the Order issued this day by the Court, Defendant's Second Motion for Summary Judgment is **GRANTED.** Each and every claim by both Plaintiffs is **DISMISSED WITH PREJUDICE.** The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date.

**THIS IS A FINAL JUDGMENT.**