Isabella **ALEXANDER**, Plaintiff,

v.

**SISTERS OF CHARITY OF THE INCARNATE WORD, d/b/a St. Elizabeth Hospital, Defendants.**

No. 1:98–CV–1552.

United States District Court,
E.D. Texas,
Beaumont Division.

March 17, 1999.

David T. Lopez, David T. Lopez & Associates, Houston, TX, for plaintiff.

Barbara Louise Johnson, Wickliff & Hall, Houston TX, for defendants.

## MEMORANDUM OPINION

COBB, District Judge.

Plaintiff, an African American woman, alleges that in 1996 she unsuccessfully applied for but was denied the position of Warehouse Day Supervisor at the Sisters of Charity Hospital (hereinafter Sisters of Charity or, simply, Sisters) owned and operated by the Sisters of Charity of the Incarnate Word. This denial came after almost 20 years as an employee of the Sisters, during which time Plaintiff had advanced steadily and received good performance reviews. The employee who received the Day Supervisor job was a white female who had worked for less than one year for the Sisters of Charity and had significantly less experience than the plaintiff. Plaintiff proceeded to make inquiries

to the administration, first with the Sisters' warehouse manager (who was white) then to the director of Human Resources (also white), then to the Sisters' chief executive officer (white) and finally to the Sisters' administrator (white). Eventually, Plaintiff received a letter of apology stating that her seniority had mistakenly not been considered.

Shortly thereafter, the same white female who had received the Day Supervisor position, announced her resignation. In response, the Sisters of Charity promised the white female another, higher paying position, if she would remain employed at the hospital. The white female did not resign and was provided the position of Inventory Control Coordinator. No job posting was ever made by the Sisters for this position, and Plaintiff was given no opportunity to apply for it. After making inquiries, Plaintiff was allegedly told that while the white female would have more job duties, her title would not change. The following week, despite the Sisters of Charity's assurances, the white female's job title changed, as evidenced by the fact that she began wearing a badge which identified her as the Inventory Control Coordinator.

Plaintiff made inquiries regarding the white female's title change. Initially, the Sisters' director of Human Resources claimed that the matter could not be discussed with her. After Plaintiff mentioned that she was denied an opportunity to apply for the job, she was told that a mistake had been made and that the job would be posted after all. Subsequently, the job was posted and Plaintiff submitted an application. Weeks later, the Sisters of Charity issued Plaintiff a letter stating that the position of inventory control coordinator would not be filled, but instead the decision on the position would be deferred. Meanwhile, the white female continued to perform the duties of the position.

After receiving the letter which claimed that the position would not be filled, and as the white female continued to perform the duties of the position, Plaintiff allegedly began to experience repeated acts of retaliation and harassment by the Sisters of Charity. These included being subjected to specious investigations, being threatened with suspension for refusing to sign a consent to reprimand form, being reprimanded for otherwise excused absences, being denied a raise, and being threatened with having complaints filed against her with the police.

During the time in which Plaintiff was allegedly being retaliated against by the Sisters, the same white female who was promoted to Day Supervisor and then provided the Inventory Control Coordinator job was promoted again. Although her new job required a college degree, the white female did not possess such a degree. In light of these facts, Plaintiff requested a job description from Human Resources for the position given to the white female, but was denied. Plaintiff was then told that the white female's former position would be filled with a hire from outside personnel. Until the position was filled, Plaintiff and other employees in her department performed the white female's former job duties.

Based on the above facts, Plaintiff alleges two claims, one for employment discrimination pursuant to 42 U.S.C. § 1981 and one for the intentional infliction of emotional distress. In terms of her § 1981 claim, Plaintiff claims that her experience is evidence of a larger practice by the Sisters of Charity of excluding African–Americans from promotion to positions of authority and management and of providing these positions to whites.

I. DISCRIMINATION CLAIM

■ Plaintiff alleges discrimination pursuant to 42 U.S.C. § 1981. Claims of racial discrimination brought under § 1981 are governed by the same evidentiary framework as claims of employment discrimination brought under Title VII. *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042 (5th Cir.1996); *LaPierre v. Benson Nissan*

Inc., 86 F.3d 444 (5th Cir.1996) fn. 2. *citing Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 105 L.Ed.2d 132. 491 U.S. 164, 109 S.Ct. 2363, 2377–78, 105 L.Ed.2d 132 (1989) (although *Patterson,* as it was decided in 1989, would have precluded Plaintiff's § 1981 claim, it has since been overruled by Congress. *See* Pub.L. 102–166, Nov. 21, 1991, 105 Stat. 1071, Civil Rights Act of 1991) According to Title VII, the plaintiff must initially establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Meinecke v. H & R Block of Houston,* 66 F.3d 77 (5th Cir.1995); *Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 957 n. 4 (5th Cir.1993). The prima facie case, if established, raises a presumption of discrimination, which the defendant must rebut by articulating a legitimate, nondiscriminatory reason for its actions. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981); *Meinecke,* 66 F.3d at 83. If the defendant satisfies this burden, the presumption disappears, and the plaintiff must prove that the proffered reasons are a pretext for discrimination. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993); *Meinecke,* 66 F.3d at 83; *Bodenheimer,* 5 F.3d at 957.

■■ Under the above analysis, Plaintiff appears to have established a prima facie case, and thereby avoided the sanction of summary judgment. Under Title VII, a plaintiff must establish a prima facie case by showing (1) that she belongs to a racial minority; (2) that she applied for and was qualified for a job which the employer was seeking applicants; (3) that she was rejected despite her qualifications; and (4) that the position remained open, and the employer continued to seek applications from persons with her qualifications. *Simmons v. Rothe Development, Inc.,* 952 F.Supp. 486, 488 (S.D.Tex.1997). This is exactly what happened in this case. Plaintiff, as an African American, clearly belongs to a racial minority. She applied for a job that she was qualified for and for which the Sisters of Charity was seeking applicants. She was then rejected despite her qualifications. Finally, the employer continued to seek applications and hired someone not merely equally qualified, but significantly less qualified.

Defendant fails to articulate a nondiscriminatory reason for their actions. Instead, they pretend that Plaintiff failed to state what her qualifications were, and also that the position of Inventory Control Coordinator was never filled. Plaintiff's work history, despite Defendant's allegation, clearly goes to her qualifications, as does the somewhat damning admission on the part of the Sisters of Charity that it failed to examine Plaintiff's qualifications in filling the Day Supervisor job. Further, Defendants fail to mention the Day Supervisor job at all. They speak solely about the Inventory Control Coordinator position. Consequently, the Sisters fail to provide a non-discriminatory reason for why Plaintiff was not hired as the Day Supervisor, thereby failing to challenge Plaintiff's prima facie case.

■ The Sisters of Charity's claims regarding the Inventory Control Coordinator position are ingenuous. They allege that the position was never filled. This runs contrary to Plaintiff's allegation that the white female who was hired in her place as a Day Supervisor began wearing a badge denoting her as the Inventory Control Coordinator. In considering a Motion for Summary Judgment (or, in this case, a Motion to Dismiss), the Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Simmons v. Rothe Development, Inc.,* 952 F.Supp. 486 (S.D.Tex.1997). Once this is done, summary judgment is only appropriate if no genuine issue of material fact remains. Fed.R.Civ.P. 56(c). Taking Plaintiff's allegations to be true, a signifi-

cant issue of material fact remains in this case regarding the potentially race-related motivations of the Sisters' in their dealings with Plaintiff. Therefore, in regard to Plaintiff's § 1981 claim, the Sisters of Charity's Motion to Dismiss should be denied.

## II. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

In order to establish a claim for the Intentional Infliction of Emotional Distress, a plaintiff must establish the following:

(1) Defendant acted intentionally or recklessly;

(2) the conduct was extreme and outrageous

(3) the actions of Defendant caused Plaintiff emotional distress; and

(4) Plaintiff's emotional distress was severe.

*Twyman v. Twyman,* 855 S.W.2d 619, 621–22 (Tex.1993).

If Plaintiff's allegations are viewed in the light most favorable to her, then a significant issue of material fact exists regarding whether the above requirements are satisfied. First, it appears that, particularly in regard to the retaliation and harassment alleged by the plaintiff, that the Sisters acted intentionally, that their actions were extreme and outrageous, that they caused Plaintiff emotional distress and that this distress was severe. Consequently, the Sisters of Charity's Motion to Dismiss Plaintiff's claim for intentional infliction of emotional distress should be denied.