United States Court of Appeals,

Fifth Circuit.

No. 96-20533

Summary Calendar.

Diana WARD, Plaintiff-Appellant,

v.

BECHTEL CORPORATION, Defendant-Appellee.

Jan. 2, 1997.

Appeal from the United States District Court for the Southern District of Texas.

Before HIGGINBOTHAM, WIENER and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

Diana Ward, an engineer and an African-American woman, sued her former employer, Bechtel Corporation, alleging workplace discrimination based on her sex, race, and national origin in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.* She also asserted state law claims of intentional infliction of emotional distress, premises liability, and negligent hiring, supervision, and retention. Based upon our review of the briefs, the applicable law, and relevant portions of the record, we hold that the district court properly granted summary judgment in favor of Bechtel on all counts.

*Facts*

In June 1991, Bechtel assigned Ward to a supervisory position on an engineering project. One of the engineers supervised by Ward was Mohan Manghnani. According to Ward's evidence, Manghnani was a difficult employee from the outset, which one of Ward's

1

supervisors attributed to Manghnani's reluctance to being supervised by an African-American woman. Ward claimed that Manghnani's behavior became more openly hostile after she refused to recommend him for a promotion in January 1992. Manghnani's hostility erupted in several discrete incidents between June 1992 and April 1993 in which he allegedly threatened Ward and, on one occasion, elbowed her in the forearm. Even after Bechtel, at Ward's request, reassigned Manghnani to a different engineering project and building, he allegedly persisted in stating that he would "kick [Ward's] ass" and "get" her. Concerned for her safety and dissatisfied with Bechtel's response to her concerns, Ward submitted her resignation on April 29, 1993.

*Standard of Review and Summary Judgment Standard*

We review the district court's grant of summary judgment *de novo,* applying the standard set out in Fed.R.Civ.P. 56(c). Rule 56(c) mandates the entry of summary judgment against a party who has failed to make an evidentiary showing sufficient to establish an essential element of her case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Frazier v. Garrison Indep. Sch. Dist.,* 980 F.2d 1514, 1520 (5th Cir.1993). Summary judgment is not precluded in this case merely because appellant seeks an opportunity to prove that Bechtel was motivated by discriminatory intent. *See International Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1263 (5th Cir.1991), *cert. denied,* 502 U.S. 1059, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992).

*Title VII*

2

Ward's complaint alleged that Bechtel unlawfully discriminated against her on the basis of her sex, race, and national origin. She also argues that she was placed in a hostile work environment on the basis of her sex and race, and that Bechtel failed to respond adequately to her complaints about this harassment.

The Supreme Court outlined the elements of a Title VII discrimination claim in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). In the present context, *McDonnell Douglas* requires Ward to establish, as her *prima facie* case, that (1) she belongs to a protected group, i.e., African-American women; (2) that she was qualified for her position; (3) that she was dismissed or suffered an adverse employment action; and (4) that Bechtel sought to replace her with a similarly qualified white man. *See id.* at 802 n. 13, 93 S.Ct. at 1824 n. 13; *see also LaPierre v. Benson Nissan, Inc.,* 86 F.3d 444, 448 (5th Cir.1996).

Ward seeks to satisfy the third element by claiming that she was constructively discharged from Bechtel. Constructive discharge can form the basis of a Title VII claim. *Guthrie v. Tifco Indus.,* 941 F.2d 374, 377 (5th Cir.1991). "To show constructive discharge, an employee must offer evidence that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign." *Barrow v. New Orleans S.S. Ass'n,* 10 F.3d 292, 297 (5th Cir.1994). Ward failed to adduce evidence that her decision to resign was reasonable based on any of the factors identified in *Barrow.* She did not, for example,

3

demonstrate that Bechtel demoted her, cut her salary, or reassigned her to remedial or degrading work, any of which would tend to support a finding of constructive discharge. *Barrow,* 10 F.3d at 297. The list of factors in *Barrow* is non-exclusive, but Ward has failed to present other evidence sufficient to show that Bechtel placed her in an intolerable work environment. *Compare Guthrie,* 941 F.2d at 377 (assuming *arguendo* that constructive discharge was established where employer demoted plaintiff, cut his pay 40 percent, and assigned him to work for a less experienced colleague 17 years his junior). We agree with the district court that a reasonable person in Ward's position would not have felt compelled to resign.[1]

The district court also found that appellant's hostile work environment claim failed the test of summary judgment. *See Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Even assuming *arguendo* that Ward was placed in such an environment, she cannot prevail unless she additionally shows that Bechtel failed to take "prompt and appropriate remedial action in response" to her allegations. *See Carmon v. Lubrizol Corp.,* 17 F.3d 791 (5th Cir.1994). Here, the summary judgment evidence conclusively establishes that Bechtel investigated Ward's allegations against Manghnani, that Manghnani was disciplined and

---

[1]Appellant's failure to raise a fact question as to whether she suffered an adverse employment action is dispositive of her Title VII discrimination claim. Accordingly, we need not address the district court's alternative holding that appellant failed to adduce evidence that any adverse action she might have suffered was motivated by discriminatory animus on the part of Bechtel.

4

threatened with termination if his abusive conduct persisted, that he was removed from appellant's engineering project and the building in which she worked, and that he was instructed to have no contact with her. The company also offered appellant paid time off, medical leave, participation in an employee assistance program, and an escort to and from her car each workday. Finally, upon receiving Ward's letter of resignation, Bechtel, in an effort to retain her services, postponed action on her resignation while hiring two workplace violence experts to conduct a risk assessment of Manghnani. Ward refused to cooperate in the experts' study. On this record, we agree with the district court that appellant failed to raise a genuine issue as to whether Bechtel failed to respond adequately to her complaints. *Compare Hirras v. National R.R. Passenger Corp.,* 95 F.3d 396, 400 (5th Cir.1996) (affirming summary judgment in employer's favor on Title VII claim where employer "took [the employee's] complaints seriously and conducted a prompt and thorough investigation").

 *Intentional Infliction of Emotional Distress*

The district court also granted summary judgment on Ward's claim of intentional infliction of emotional distress, a tort recognized by the Texas Supreme Court in *Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex.1993) (adopting RESTATEMENT (SECOND) OF TORTS § 46 (1965)). The district court held that there was no genuine issue as to whether Bechtel's conduct was "extreme and outrageous,"

5

as required to establish liability.[2]  We again agree with the district court.  As we have explained:

> Conduct is outrageous, for purposes of an intentional infliction of emotional distress claim, if it surpasses all bounds of decency, such that it is utterly intolerable in a civilized community....  Liability does not extend to mere insults, indignities, threats, annoyances, or petty oppressions.

*Weller v. Citation Oil & Gas Corp.,* 84 F.3d 191, 195 (5th Cir.1996) (citing *Ugalde v. W.A. McKenzie Asphalt Co.,* 990 F.2d 239, 243 (5th Cir.1993) (internal quotation marks omitted)), *petition for cert. filed,* 65 USLW 3205 (Sept. 3, 1996).

Without suggesting that appellant's concerns regarding Manghnani were "petty," we hold that she has failed to raise a genuine issue of material fact as to whether Bechtel's conduct was extreme and outrageous.  Appellant raises a related argument that Bechtel "ratified" Manghnani's conduct, but this claim is unpersuasive in light of the company's decisive actions to remove Manghnani from her work site and to prevent him from harassing her. *Cf. Prunty v. Arkansas Freightways, Inc.,* 16 F.3d 649, 655 (5th Cir.1994) (employee's sexual harassment of plaintiff was ratified where supervisor "took no action to remedy the situation ...").[3]

*Negligence Claims*

---

[2]To establish intentional infliction of emotional distress, the plaintiff must show that (1) the defendant acted intentionally or recklessly, (2) the defendant's conduct was extreme and outrageous, (3) the defendant's actions caused the plaintiff emotional distress, and (4) the emotional distress suffered by the plaintiff was severe.  *Twyman,* 855 S.W.2d at 621.

[3]Because we find no extreme and outrageous conduct on Bechtel's part, we need not address the district court's conclusion that Ward's emotional distress was not "severe."

Finally, the district court correctly held that appellant's remaining state tort claims, sounding in negligence, were preempted by the Texas Workers' Compensation Act. TEX.LAB.CODE ANN. § 408.001 (Vernon 1996). The Act provides the exclusive remedy for injuries sustained by an employee in the course of his employment as a result of his employer's negligence. *Dickson v. Silva,* 880 S.W.2d 785 (Tex.App.-Houston [1st Dist.] 1993, *writ denied* ). *See also Ajaz v. Continental Airlines,* 156 F.R.D. 145, 148-49 (S.D.Tex.1994).[4] Appellant, however, contends that her negligence claims are not pre-empted because her psychological injuries were not sustained in the course of her employment. She reasons that Manghnani's conduct was personal in nature, and was motivated by his bias against women and African-Americans. However, there is no question that appellant based her premises liability and negligent hiring, supervision, and retention claims on Bechtel's alleged negligence with respect to her workplace supervision of Manghnani. This is not a case involving an off-duty altercation between two employees of the same company. *Compare Prescott v. CSPH, Inc.,* 878 S.W.2d 692 (Tex.App.-Amarillo 1994, *writ denied* ) (employee stabbed by off-duty co-worker acting for personal reasons could not recover under T.W.C.A. but was limited to common law causes of action not barred by the Act). The essence of Ward's case is that she was harmed, while trying to do her job, by another employee who

---

[4]Section 408.001 took effect Sept. 1, 1993. The previous version of the statute contained a similar exclusivity provision. *See* TEX.REV.CIV.STAT.ANN. §§ 8306-83091 (Vernon 1967 & Supp.1985), *cited in Reed Tool Co. v. Copelin,* 689 S.W.2d 404, 406 (Tex.1985) (internal citations omitted).

7

resisted her authority, and that Bechtel failed to respond adequately. To the extent that her case is based on Bechtel's alleged negligence, recovery is foreclosed by the Texas Workers' Compensation Act.

Appellant failed to create a genuine issue of material fact as to any of her claims against Bechtel. Accordingly, the summary judgment of the district court is AFFIRMED.