Robin A. YOUNG

v.

HOUSTON LIGHTING &
POWER COMPANY.

Civil Action No. G–96–568.

United States District Court,
S.D. Texas,
Galveston Division.

June 24, 1998.

---

R. Keith Vaughan, Carabin and Shaw, San Antonio, TX, for Robin A Young.

L. Chapman Smith, Maria Wyckoff Boyce, Matthew P. Eastus, Baker & Botts, Houston, TX, for Houston Lighting & Power Co.

### ORDER GRANTING SUMMARY JUDGMENT

KENT, District Judge.

Plaintiff brings this action against her former employer, Houston Lighting & Power Company (HL & P), alleging sexual harassment, sex discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and the Texas Labor Code, in addition to various state law claims.[1] Now before the Court is Defendant's Motion for Summary Judgment, filed April 23, 1998. For the reasons set forth below, Defendant's Motion is **GRANTED**, and all of Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

---

1. Plaintiff's First Amended Complaint was filed on September 18, 1996. This action began as part of a larger lawsuit, *Logue v. Houston Lighting & Power Co.*, 1996 WL 941801, Civil Action No. 96–251, brought by several female employees of HL & P, alleging similar violations but different fact scenarios. On October 2, 1996, the case was severed into individual actions because of the unique fact situations applicable to each Plaintiff. Young did not amend her Complaint after the case was severed.

## I. FACTUAL BACKGROUND

Plaintiff Young was hired in 1985 to work at Defendant's South Texas Project Nuclear Electric Generating Station ("STP") as a Chemical Operator Trainee in the Chemical Operations Division. Prior to her employment with HL & P, Young had no experience working at nuclear facilities, nor did she have any nuclear energy training. Young spent her first three years at STP as an apprentice Operator. She became a full journeyman Chemical Operator in the Chemical Operations Division in 1988. She held that position until 1995, when HL & P reclassified her as a Reactor Plant Operator in the Plant Operations Division. Young is currently working in that capacity.

Young has previously filed suit against HL & P in this Court, on October 28, 1992, in the action styled *Robin A. Young v. Houston Lighting & Power Co.,* Civil Action No. G–92–518. In that suit, Young alleged workplace sexual harassment, discrimination, and retaliatory denial of promotions, along with various common law causes of action. That case ended with the parties agreeing to a "Full and Final Release" (the "Release"), under which Young received substantial compensation in exchange for her comprehensive discharge of "any and all claims" against HL & P which may arise "directly or indirectly from . . . the matters described in the court papers and pleadings" in that action. On October 4, 1993, the Court dismissed Young's 1992 action with prejudice.

Young is now back for another big bite at the apple. On November 20, 1995, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging sex discrimination and retaliation.[2] She filed this lawsuit in the 23rd Judicial District Court of Matagorda County, Texas on March 1, 1996. It was timely and properly removed to this Court on May 13, 1996.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

The party moving for summary judgment, HL & P in this case, bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant may meet this burden by pointing out to the Court that there is an absence of proof on any essential element of the nonmovant's case. *Id.,* 477 U.S. at 325, 106 S.Ct. at 2554. Once this burden is met, the burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont De Nemours and Co.,* 58 F.3d 193, 195 (5th Cir.1995). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead must come forward with specific facts to show that there is a genuine issue for trial. *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56 (citing FED. R. CIV. P. 56(e)).

The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted.

---

**2.** Young stated in her EEOC charge that she was complaining about sexual harassment and deni- als of promotions.

*Id.; see also Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

### III. TITLE VII CLAIMS

At the outset, the Court notes that Plaintiff's allegations against HL & P are extremely serious, and cannot be taken lightly. Plaintiff paints a portrait of HL & P as a robust man's world, where women are harassed, mocked, laughed at, and generally treated as objects, while the men receive all of the responsibilities and promotions without regard to merit or skill. Such weighty allegations require corresponding proof. This is especially true in the case of HL & P's nuclear power plant. As this Court has acknowledged in the past, HL & P clearly has a significant obligation to its employees and to the public as a whole to ensure compliance with the regulations at its nuclear power plant, and to ensure that its operation is handled by only those nuclear operators possessing the utmost qualifications and skill. This Court will not lightly second-guess HL & P's decisions with regard to hiring and promotion of its nuclear power plant operators, especially where no evidence exists to back up the allegations.

With these considerations firmly in mind, the Court proceeds to an analysis of Defendant's Motion for Summary Judgment.

#### A. *Claim Preclusion*

■■■ HL & P argues that any claims Plaintiff asserts based on events that occurred prior to September 24, 1993 are precluded by the 1993 Release. Courts uphold the validity, and indeed encourage the use, of settlement and release as a means of resolving employment disputes. *See Jackson v. Widnall,* 99 F.3d 710, 714 (5th Cir.1996); *Nail v. Brazoria County Drainage Dist. No. 4,* 992 F.Supp. 921 (S.D.Tex.1998). Such agreements are binding on both parties. *See Jackson,* 99 F.3d at 714; *cf.* 29 C.F.R. § 1614.504. On September 24, 1993, Plaintiff signed the Release discharging HL & P from any claims arising out of HL & P's alleged harassment, discrimination, and/or denials of promotion up to that time. The burden is on Plaintiff to show that the Release is invalid. *See Williams v. Phillips Petroleum Co.,* 23 F.3d 930, 935 (5th Cir.1994).

■■■ Plaintiff argues in Response that the Release is invalid because HL & P has failed to fulfill its obligations under the Release. Specifically, Plaintiff argues that HL & P has taken no action to remedy the alleged discrimination; that the references to be removed from Young's file were not removed; that HL & P has threatened to fire Young since September of 1995; that Young has not been considered for any "hot licensing training classes," as required in the Release; and that HL & P has violated its agreement not to retaliate against Young. The only evidence Young presents to substantiate any of these allegations is her own affidavit. A party's own self-serving affidavit is insufficient evidence to fulfill the nonmovant's summary judgment burden. *See Lechuga v. Southern Pacific Transp. Co.,* 949 F.2d 790, 798 (5th Cir.1992) ("Conclusory statements in an affidavit do not provide facts that will counter summary judgment evidence, and testimony based on conjecture alone is insufficient to raise an issue to defeat summary judgment.") (citation omitted); *Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir.1996) ("In short, conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden.") (en banc); *Pfau v. Reed,* 125 F.3d 927, 940 (5th Cir.1997), *petition for cert. filed,* 66 U.S.L.W. 3720 (U.S. Apr. 14, 1998) (No. 97–1751); *see also McKey v. Occidental Chem. Corp.,* 956 F.Supp. 1313, 1319 (S.D.Tex.1997)(Kent, J.) (speculation and belief are insufficient to create a fact issue on summary judgment).

Accordingly, the Court finds that all of Plaintiff's claims that existed prior to September 24, 1993 have been discharged by the Release and are barred due to claim preclusion. *See Strozier v. General Motors Corp.,* 635 F.2d 424, 426 (5th Cir. Unit B Jan.1981). Such claims are therefore **DISMISSED WITH PREJUDICE.**

#### B. *Timeliness Under the EEOC Statute of Limitations*

Defendant also argues that the majority of Plaintiff's Title VII claims are untimely. Title VII requires a plaintiff to file a charge with the EEOC within 300 days of the al-

leged unlawful employment practice: January 24, 1995 in this case.[3] See 42 U.S.C. § 2000–5(e); *Mennor v. Fort Hood Nat'l Bank,* 829 F.2d 553, 556 (5th Cir.1987). Defendant argues that most of Plaintiff's sexual harassment claims occurred well before January 24, 1995. The Court agrees that, to the extent the alleged discriminatory actions occurred before January 24, 1995, they are time-barred. Indeed, Plaintiff does not even respond to Defendant's argument in this regard. However, in an abundance of caution, the Court will nevertheless address all claims arising after September 24, 1993 on their merits.

## C. *Intentional Discrimination*

### 1. *The* McDonnell Douglas/Burdine *Framework*

First, Plaintiff alleges she was discriminated against because of her sex. Section 703(a)(1) of Title VII provides in relevant part:

It shall be an unlawful employment practice for an employer to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a)(1). Title VII also prohibits an employer from retaliating against any of its employees for asserting their rights under Title VII. *See id.* § 2000e–3(a).

Plaintiff's Title VII claims require a showing of intentional discrimination. To determine whether intentional discrimination exists, the Fifth Circuit applies the burden-shifting analytical framework first established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See, e.g., Long v. Eastfield College,* 88 F.3d 300, 304 (5th Cir.1996) (applying the *McDonnell Douglas* analysis to Title VII unlawful retaliation cases); *Johnson v. Chapel Hill Independent School Dist.,* 853 F.2d 375, 381 (5th Cir.1988) (applying *McDonnell*

*Douglas* to a differential treatment case brought pursuant to Title VII).[4]

Under this framework, the Court employs a three-part test designed to determine a defendant's motivation in taking the challenged action. *See McDonnell Douglas,* 411 U.S. at 803–04, 93 S.Ct. at 1824–25; *Burdine,* 450 U.S. at 252–54, 101 S.Ct. at 1093–94. First, the plaintiff must establish a *prima facie* case by proving the elements of the discrimination claim. If the plaintiff proves her *prima facie* case, a presumption of discrimination arises. *See Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 957 (5th Cir.1993). The burden of production then shifts to the defendant to rebut this presumption by articulating a legitimate, nondiscriminatory reason for the alleged discriminatory action. *See Olitsky v. Spencer Gifts, Inc.,* 964 F.2d 1471, 1478 n. 19 (5th Cir.1992). A defendant meets this burden by proffering admissible evidence of an explanation that would be legally sufficient to justify a judgment for the defendant. *See Guthrie v. Tifco Indus.,* 941 F.2d 374, 376 (5th Cir.1991). This does not require that the defendant persuade the trier of fact that there was no intentional discrimination; the defendant need only produce evidence on that point. *See Hicks,* 509 U.S. at 507–08, 113 S.Ct. at 2747–48.

Finally, if the defendant satisfies this burden, the presumption of discrimination established by the plaintiff's *prima facie* case is defeated. *See Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10. The plaintiff's burden of persuasion then arises, and he or she must produce evidence that the defendant's proffered reasons are mere pretexts, the real reason for the action having been based on an impermissible *animus. See id.* at 256, 101 S.Ct. at 1095; *Bodenheimer,* 5 F.3d at 959. The plaintiff may succeed at this juncture, either by persuading the Court that a discriminatory reason more likely motivated the defendant, or by showing that the defendant's proffered explanation is not entitled to credence. *See Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. The ultimate burden

**3.** Plaintiff filed her claims with the EEOC on November 20, 1995.

**4.** *McDonnell Douglas* was refined in *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248,

101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and was further clarified in *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

of proving intentional discrimination rests at all times with the plaintiff. *See Hicks*, 509 U.S. at 507, 113 S.Ct. at 2749.

Summary judgment is particularly appropriate when the Court is evaluating evidence at the "pretext" stage of the *McDonnell Douglas* analysis.

'[I]t is relatively easy both for a plaintiff to establish a *prima facie* case and for a defendant to articulate a legitimate, non-discriminatory reason for his decision.' ... In the context of summary judgment ..., the question is not whether the plaintiff proves pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext.

*Britt v. Grocers Supply Co.*, 978 F.2d 1441, 1450 (5th Cir.1992) (quoting *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 811 (5th Cir.1991)). Speculation and belief are insufficient to create a fact issue as to pretext. *See Britt*, 978 F.2d at 1451. Nor can pretext be established by mere conclusory statements of a plaintiff who feels that she has been discriminated against. *See E.E.O.C v. Exxon Shipping Co.*, 745 F.2d 967, 976 (5th Cir.1984).

### 2. Prima Facie *Case of Sexual Discrimination*

■ In this case, Plaintiff alleges that, because of her sex and because she has filed discrimination lawsuits against HL & P, she was denied promotions and was treated differently than males in the workplace. To establish a *prima facie* case of sex discrimination based on a promotion denial, a plaintiff must demonstrate that: (1) she was a member of a protected group; (2) she applied for a position for which she was qualified; (3) she was rejected; and (4) after she was rejected, the employer promoted, hired, or continued to seek a member of the opposite sex for the job. *See LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 (5th Cir.1996); *Jones v. Flagship Int'l*, 793 F.2d 714, 724 (5th Cir.1986). Similarly, to establish a *pri-ma facie* case under Title VII based on differential treatment, a plaintiff must demonstrate that: (1) she belongs to a protected group (*i.e.*, she is female); (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she suffered the adverse employment action due to her membership in the protected class. *See Ward v. Bechtel Corp.*, 102 F.3d 199, 202 (5th Cir.1997); *cf. McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13.

■ Adverse employment actions based on discrimination under § 2000e–2(a)(1) encompass a broader range of conduct than those under Title VII's retaliation provision. They include discharges, demotions, refusals to hire, refusals to promote, and reprimands. *See Pierce v. Texas Dep't of Criminal Justice, Institutional Div.*, 37 F.3d 1146, 1149 (5th Cir.1994) (interpreting the anti-retaliation provision of Title VII).[5] Moreover, § 2000e–2(a)(1) "reaches acts which merely 'would tend' to affect the employee; obviously, the way in which the employee may be affected in this subpart is much broader [than the anti-retaliation provision of Title VII]." *Eastman Kodak*, 104 F.3d at 709; *see also Forsyth v. City of Dallas*, 91 F.3d 769, 773 (5th Cir.1996) (holding that the transfer of police officers from intelligence division to uniformed night patrol constituted a demotion), *cert. denied sub nom. City of Dallas v. Kirks*, —— U.S. ——, 118 S.Ct. 64, 139 L.Ed.2d 26; *LaPierre*, 86 F.3d at 448 (holding that a demotion from service manager to mechanic created a fact issue as to whether an adverse employment action had occurred); *Rizzo v. Children's World Learning Ctrs., Inc.*, 84 F.3d 758, 765 (5th Cir.1996) (holding that an employer's decision to lower a disabled employee's hours, to require her to work a "split shift," and to change her position from bus driver to cook produced a fact issue as to whether there had been an adverse employment action); *Polanco v. City of*

---

**5.** The Seventh Circuit has defined with specificity "adverse employment action" as:

[A] material adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993).

*Austin,* 78 F.3d 968, 980 (5th Cir.1996) (upholding jury finding that Hispanic police officer was disciplined more severely than his Caucasian counterpart); *Click v. Copeland,* 970 F.2d 106, 109 (5th Cir.1992) (holding that simply because sheriff deputies received no decrease in pay did not mean that their transfers were not demotions); *Fyfe v. Curlee,* 902 F.2d 401, 404 (5th Cir.1990) (holding that a transfer to a less desirable but equally paying job constituted a demotion); *Levin v. Delta Air Lines, Inc.,* 730 F.2d 994, 996 (5th Cir.1984) (holding that placing pregnant flight attendants on ground duty was an adverse employment action).

Once again, Plaintiff provides as support for her allegations nothing more than her own conclusory affidavit. Nevertheless, granting Plaintiff every possible benefit of the doubt, and understanding that discrimination under Title VII encompasses a broad range of actions, the Court finds that a reasonable jury *could* find that at least one of the complaints proffered by Plaintiff constitute a "limitation" of employment which deprived or "tended to deprive" Plaintiff of "opportunities," or at the very least adversely affected her status.[6] *See* 42 U.S.C. § 2000e–2(a)(1). Again, this finding is supportable only by giving broad latitude to Plaintiff's own affidavit, and assuming all of her conclusory allegations to be true.[7] *See Armstrong v. City of Dallas,* 997 F.2d 62, 66 n. 12 (5th Cir.1993) ("We no longer ask whether literally little evidence, *i.e.,* a scintilla or less, exists but, whether the nonmovant could, on the strength of the record evidence, carry the burden of persuasion with a reasonable jury.").

### 3. HL & P's Legitimate and Nondiscriminatory Reasons

Assuming for the moment that Plaintiff has established a *prima facie* case, the Court evaluates Defendant's proffered reasons for its actions. First, in setting forth the general circumstances surrounding Plaintiff's field of employment, Defendant has comprehensively explained the nature of the RO position and selection criteria. The RO position is "perhaps one of the most coveted—and highly regulated—positions. . . . The individuals selected for those jobs actually oversee the running of the nuclear reactor." Candidates for the position go through intense scrutiny and training, and must be certified by the Nuclear Regulatory Commission ("NRC"). In order to maintain the privilege of conducting its own training program, HL & P must maintain accreditation with the Institute for Nuclear Power Operations. If its failure rate on the final NRC license examination becomes high, HL & P could lose its accreditation. Therefore, candidates for the LOT classes are limited to those "highly qualified and motivated individuals" who HL & P believes can pass the NRC licensing test.

Because of these rigorous requirements, HL & P states that it hires numerous ex-Navy personnel who have had prior experience, usually six or more years, on nuclear-powered vessels. Many of these ex-Navy personnel are men, due to the gender composition of Navy nuclear submariners. Because HL & P has no control over the male to female ratios of Navy personnel, it argues that any disparate impact in its hiring is not actionable under Title VII. *See Keyes v. Secretary of the Navy,* 853 F.2d 1016, 1020–21 (1st Cir.1988). Finally, Defendant has shown that seniority is of no consequence whatsoever in the selection process for LOT classes, because the RO position is not subject to a collective bargaining agreement.

More specifically, Young complains that she was not accepted for the LOT 8 class in 1994. In order to be accepted to a LOT class, an HL & P employee must first meet

---

**6.** For example, Plaintiff's affidavit alleges "that there is a severe and pervasive discriminatory atmosphere at HL & P," that women are subject to sexual jokes and mocked, that she is better qualified than men who have received promotions, that "[s]eniority is only helpful is you are a male," that her supervisor tries to make her look bad, and that HL & P has prevented her from advancing through lying to her and withholding information from her.

**7.** In accordance with *McDonnell Douglas,* Plaintiff's failure to present competent evidence prevents the Court from inferring discrimination. Bending over backwards, however, the Court will continue the analysis under the assumption that a *prima facie* case of differential treatment has been established.

the prerequisites. One of the prerequisites is a mandatory diagnostic test. Although Young was invited to take the test in order to apply for LOT 8, she declined on the advice of her attorney. Because she refused to take the test, Young was removed from the list of candidates for LOT 8.

■ With respect to the next LOT class for which Young was eligible, LOT 10 in 1996, Young did not apply. She claims that she did not know about the class. HL & P claims that, even if she had applied, she would not have been chosen because she was "completely unqualified," and "not as qualified as those the company chose." To support this, HL & P attaches summary judgment evidence comparing Young's credentials to the credentials of those who were selected, and of those who were *not* selected.[8] Young's credentials were far inferior to both groups, including the unsuccessful candidates. For instance, Young has no prior nuclear experience, no supervisory experience, and no college degree. Basing a promotion decision on an assessment of qualifications qualifies as a legitimate, nondiscriminatory reason. *See Jefferies v. Harris County Community Action Ass'n*, 693 F.2d 589, 590–91 (5th Cir.1982) (per curiam).

The Court finds, as a matter of law, that Defendant's evidence that Young refused to comply with the prerequisites for LOT 8, that she did not apply for and was not qualified for LOT 10, and the strict requirements imposed on HL & P's training program and the position of an RO, constitute legitimate, non-discriminatory reasons for HL & P's failure to consider Young for LOT classes. Having found these legitimate, nondiscriminatory reasons, the burden-shifting structure of *McDonnell Douglas/Burdine* becomes irrelevant to Plaintiff's claims, and the inference of unlawful discrimination created by Plaintiff's *prima facie* evidence disappears. *See Burdine*, 450 U.S. at 255 n. 10, 101 S.Ct. at 1095.

*4. Pretext*

■ The Court now turns to the issue of pretext. A plaintiff alleging employment discrimination need not come forward with direct evidence of discriminatory intent in

order to avoid summary judgment. *See La Pierre*, 86 F.3d at 449; *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 994 (5th Cir.1996)(en banc). Such direct evidence of an employer's discriminatory intent is rare; therefore, Title VII plaintiffs ordinarily must prove their claims through circumstantial evidence. A plaintiff establishes this circumstantial evidence of intentional discrimination by demonstrating that Defendant's articulated nondiscriminatory rationale is pretextual. *See McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825; *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. Indeed, "[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the *prima facie* case, suffice to show intentional discrimination." *Hicks*, 509 U.S. at 511, 113 S.Ct. at 2749.

■ Although the burden here rests with Plaintiff, she fails to persuade the Court that a discriminatory reason more likely motivated Defendant or that Defendant's proffered reasons are unworthy of credence. *See Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. Plaintiff has failed to show that Defendant's reasons are a pretext of promotion discrimination under Title VII, because she has failed to rebut Defendant's evidence that she was not qualified for the RO or Head Operator position. The only evidence Young produces is her own affidavit stating that she is "always on time for work," always spends more time on her watch station monitoring her equipment and doing any work that needs to be done, always volunteers to help other watch stations, and that her "classroom grades have always been high." She adduces no proof whatsoever of her qualifications for the LOT class. With regard to the fact that she has no supervisory experience, Young argues circularly that she did not receive such positions because of discrimination.

Next, Young alleges that she refused to take the LOT 8 prerequisite test because it was "a last minute test that was really geared toward ex Navy nuclear people getting a much better grade than [Young] possibly could have gotten," along with a myriad of accusations regarding HL & P's adminis-

---

**8.** Out of 47 candidates for LOT 10, only eight were chosen.

tration of the test. Again, Plaintiff provides no evidence of any of this. Finally, Young disputes HL & P's contention that seniority is irrelevant to LOT selection, again with no proof whatsoever.

Other than her personal beliefs, Plaintiff clearly has no evidence to support her assertions that she was denied promotions or treated unfairly due to her sex. Similarly, an exhaustive review of the summary judgment evidence reveals that the only evidence supporting any of Plaintiff's claims is her personal belief.[9] "Speculation and belief are insufficient to create a fact issue as to pretext." *McKey v. Occidental Chem. Corp.*, 956 F.Supp. 1313, 1319 (S.D.Tex.1997)(Kent, J.). Moreover, conclusory allegations of intentional discrimination simply do not suffice. *Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir.1996) ("In short, conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden.... It is more than well-settled that an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason.") (en banc); *see also Ray,* 63 F.3d at 434 (stating that "bald assertions of age discrimination are inadequate to permit a finding that proscribed discrimination motivated [the defendant's] actions against [the plaintiff]"). Consequently, Defendant's Motion for Summary Judgment on Plaintiff's intentional discrimination claims is **GRANTED**, and those claims are hereby **DISMISSED WITH PREJUDICE.**

## D. *Retaliation*

■ Defendant moves to dismiss Plaintiffs' claims of unlawful retaliation under Title VII and state law.[10] Title VII prohibits

an employer from "discriminat[ing] against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e–3(a). To establish a *prima facie* case for retaliation in violation of Title VII, Plaintiff must show that (1) she engaged in protected conduct, (2) a negative personnel action was taken by the employer against her, and (3) there is a cause and effect connection between the first two elements. *Grizzle v. Travelers Health Network, Inc.,* 14 F.3d 261, 267 (5th Cir.1994).

■ With respect to two of the bases for Plaintiff's retaliation claim, that she was not promoted to Head Operator and not considered for LOT class, the Court's decision on Plaintiff's discrimination claims is dispositive of her retaliation claims. Since § 2000e–3(a) only covers unlawful employment actions, and the Court has found the discrimination claims to be lacking in merit, the retaliation claims based on such allegations must also be **DISMISSED WITH PREJUDICE.** *Cf. Jefferies,* 615 F.2d at 1036 (where retaliation claims are dismissed, discrimination claims must also be dismissed).

■ Plaintiff also alleges that she was retaliated against when she was "told not to put in for transfer to the industrial Health and Safety Department." However, the evidence shows that, on another occasion in 1996, HL & P did transfer Young to a position that she requested. This evidence rebuts any presumption that the event complained of, if it even occurred, had a causal connection to Young's filing a lawsuit. Plaintiff presents no evidence to establish this causal basis, and so fails to make out a *prima facie* case of retaliation. Accordingly, Plaintiff's retaliation claims are **DISMISSED WITH PREJUDICE.**

9. Although Plaintiff's various allegations are too numerous to address individually, and she produces no evidence supporting any of them other than her own opinion, one other allegation bears mentioning. Young claims that she was denied a Head Operator position in mid–1994. HL & P has shown that Young's supervisor at that position would have been Scott Stephens, her alleged harasser in the 1992 lawsuit. The Release in that lawsuit obligated HL & P to ensure that Young would never be assigned to work with

Scott Stephens. Thus, even assuming that this claim is not barred by the EEOC 300–day statute of limitations, Young produces no evidence that HL & P's reason for not giving her the Head Operator position, *i.e.* trying to abide by the Release, was a pretext.

10. Plaintiffs' state law claim of retaliation under the Texas Labor Code is interpreted consistently with Title VII law.

### E. Hostile Work Environment Sexual Harassment

 Next, Plaintiff asserts a claim of hostile environment sexual harassment under Title VII. For such a claim, Young must prove the following elements:

(1) she belongs to a protected group;

(2) she was subject to unwelcome sexual harassment,

(3) the harassment was based upon sex;

(4) the harassment affected a term, condition or privilege of employment,

(5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

See Waltman v. International Paper Co., 875 F.2d 468, 477 (5th Cir.1989).

 The following is a representative list of the allegations that form the basis of Plaintiff's hostile work environment sexual harassment claim: [11] (1) the atmosphere at HL & P includes sexual jokes, "women are routinely spoken of in terms of being obviously less qualified, more emotionally out of control, having been promoted because of who they are supposedly having a sexual relationship with and generally have less value to the company other than male counterparts"; (2)the male employees talk about the details of their sex lives and tell jokes that degrade females; (3) a chemical plant operator supposedly told Young, in her own words, that "[w]omen can't work in the main control room" and that women did not serve on Navy submarines "because you'd have a bulldike on the boat ... and pretty soon everybody's periods would be cycling with her. And then you'd have one week out of the month where you'd always have a reactor scram"; (4) HL & P allegedly stopped hiring women for positions in chemical operations; (5) sexually explicit posters at watch stations; (6) when Young complained about the lack of small uniforms for women, she was told (by an unknown person) "girls like to go shopping, you go shopping"; (7) when Young complained of a co-worker who did not like working with girls, HL & P "allowed him to work on his own, actually doing nothing productive for the company," rather than making him work with women; and (8) men who are assigned to help the women hang labels will either lose them or throw them away each time, causing the women to have to do the job themselves.

 Plaintiff's workplace sexual harassment claims fail for several reasons. First and foremost, there is, once again, no evidence whatsoever to substantiate any of the above allegations, other than Plaintiff's own affidavit and deposition. Next, to maintain a claim of sexual harassment, "the challenged conduct must create an environment that a reasonable person would find hostile or abusive." Weller v. Citation Oil & Gas Corp., 84 F.3d 191, 194 (5th Cir.1996), cert. denied, —— U.S. ——, 117 S.Ct. 682, 136 L.Ed.2d 607 (1997). Whether an environment is hostile or abusive depends on the totality of the circumstances, such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance. See Harris v. Forklift Systems, Inc., 510 U.S. 17, 21–22, 114 S.Ct. 367, 371–72, 126 L.Ed.2d 295 (1993). "[C]asual or isolated manifestations of a discriminatory environment are not sufficient to demonstrate a hostile working environment under the law." Gearhart v. Eye Care Ctrs. of America, Inc., 888 F.Supp. 814, 825 (S.D.Tex. 1995); see also DeAngelis, 51 F.3d at 595–96; Jones, 793 F.2d at 719–20.

None of the incidents identified in the record rise to the level required to establish a hostile work environment. Several of the alleged incidents do not even involve Young, but relate to other women or are general in nature. For example, Young complains of peep holes in the bathroom that she acknowledges did not affect her because she was on sick leave at the time. Also, Plaintiff does not claim that the alleged sexual jokes and posters in work stations were directed at her or affected her employment. These events

---

11. Although the Court has already decided to consider all of Young's allegations occurring after the Release in the 1992 case on their merits, despite the probable bar of all events occurring after January 24, 1995 due to the EEOC statute of limitations, it should be noted that, in her Response, Plaintiff herself asserts only those acts occurring in 1995, 1996, and 1997.

do not meet the requirement that she personally was subject to unwelcome sexual harassment that "affected a term, condition or privilege of employment."

 Next, Young has not established that the incidents she complains of were based on her sex. She merely alleges that she perceives that the alleged mistreatment was based on her sex. Nowhere does she allege the sort of highly offensive "verbal or physical conduct of a sexual nature" required for sexual harassment. *See Jones v. Flagship International*, 793 F.2d 714, 719 (5th Cir.1986). Merely alleging that women were treated differently than men is insufficient; the conduct "must create an environment that a reasonable person would find hostile or abusive." *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir.1996), *cert. denied*, ___ U.S. ___, 117 S.Ct. 682, 136 L.Ed.2d 607 (1997). At most, the allegations support that Young did not have a good working relationship with her coworkers, and did not like their off-colored jokes. However, Title VII is not a "general civility code for the American workplace." *Oncale v. Sundowner Offshore Services, Inc.*, ___ U.S. ___, ___, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998). It does not prohibit all verbal or physical harassment. *Id.* Recently, the Supreme Court has made it explicitly clear that "[w]e have never held that workplace harassment ... is automatically discrimination because of sex merely because the words used have sexual content or connotations." *Id.; accord Jackson v. City of Killeen*, 654 F.2d 1181, 1186 (5th Cir. Unit A Sept.1981) ("Title VII is not a shield against harsh treatment at the workplace."). For Title VII to step in, the Plaintiff must do more than conclusorily allege that men made dirty jokes about women, did not like working with her, and that her uniforms did not fit.

Finally, Plaintiff did not even inform HL & P of several of the incidents that she alleges occurred. Thus, she has not established that HL & P "knew or should have known" about the alleged harassment and failed to take appropriate action. To survive summary judgment, Plaintiff must produce evidence showing "that [Defendant] knew or should have known of the harassment in question and failed to take prompt remedial action." *Jones*, 793 F.2d at 719–20 (quotations omitted). With respect to some of the incidents that she did report, in response to HL & P's claims that the offender was disciplined, Young merely alleges that HL & P is lying. Again, vague allegations are insufficient to satisfy Plaintiff's summary judgment burden. *See Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (party opposing summary judgment must come forward with specific facts showing a genuine issue for trial).

Accordingly, because Plaintiff has failed to establish the essential elements of her sexual harassment claim, Defendant's Motion for Summary Judgment on that claim is **GRANTED**, and it is **DISMISSED WITH PREJUDICE.**

## IV. STATE LAW CLAIMS

### A. *Negligence*

 Plaintiff also asserts negligence, negligent hiring, negligent supervision, and negligent retaliation claims. She alleges that HL & P's pattern of disregarding harassment and discrimination and of allowing management personnel to create a hostile work environment for women is negligence. The Court's findings above regarding Plaintiff's hostile work environment, discrimination, and retaliation claims is dispositive as to her state law claims as well.[12] Accordingly, Plaintiff's claims of negligence, negligent hiring, negligent supervision, and negligent retaliation are **DISMISSED WITH PREJUDICE.**

### B. *Intentional Infliction of Emotional Distress*

 Young alleges that, based on the discrimination, harassment, and retaliation,

---

12. Moreover, Plaintiff's claims are barred by the Texas Workers' Compensation Act ("TWCA"), Tex. Lab Code Ann. § 408.001. "[TWCA] provides the exclusive remedy for injuries sustained by an employee in the course of his employment as a result of his employer's negligence." *Ward v. Bechtel Corp.*, 102 F.3d 199, 203 (5th Cir.1997)

("The essence of Ward's case is that she was harmed, while trying to do her job, by another employee who resisted her authority, and that Bechtel failed to respond adequately. To the extent that her case is based on Bechtel's alleged negligence, recovery is foreclosed by the [TWCA].").

HL & P acted intentionally or recklessly in their treatment of her. Once again, the Court's rejection of those allegations is dispositive of her intentional infliction claim. Moreover, even if Plaintiff's Title VII claims had succeeded, her allegations simply do not rise to the level necessary to support an intentional infliction of emotional distress claim. For conduct to be "extreme and outrageous," it must surpass all bounds of decency, such that it is utterly intolerable in a civilized community. Liability does not attach for mere insults, indignities, threats, annoyances, or petty oppressions. *See Ward*, 102 F.3d at 203. In the context of employment disputes, even successful claims of discrimination do not necessarily rise to the level of intentional infliction of emotional distress. *See Johnson v. Merrell Dow Pharmaceuticals, Inc.*, 965 F.2d 31, 33–34 (5th Cir.1992) (denial of promotion and salary disputes are "mere employment disputes" insufficient to establish a claim for intentional infliction of emotional distress); *Ugalde v. W.A. McKenzie Asphalt Co.*, 990 F.2d 239, 243 (5th Cir.1993) (allegations of illegal discrimination, in and of themselves, do not suffice to establish an intentional infliction of emotional distress claim). Accordingly, Plaintiff's intentional infliction of emotional distress claim is **DISMISSED WITH PREJUDICE**.

## V. HL & P'S REQUEST FOR ATTORNEY'S FEES AND COSTS

HL & P argues that it is entitled to attorney's fees and costs under 42 U.S.C. § 2000e–5(k) for having to defend this lawsuit. In support, HL & P argues that Young should have dismissed her lawsuit when this Court dismissed another plaintiff's similar claims in *Stewart v. Houston Lighting & Power Co.*, 998 F.Supp. 746 (1998), because (1) Young's claims are almost identical to Stewart's claims, (2) the claims in both suits are based on the same First Amended Complaint, and (3) Young's claims are governed by this Court's opinion in *Stewart*.

In any action or proceeding to enforce a provision of Title VII, the Court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs. *See* 42 U.S.C. § 2000e–5(k). Such fees are allowed when the plaintiff's underlying claims are frivolous, unreasonable, or groundless. *See Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 422, 98 S.Ct. 694, 701, 54 L.Ed.2d 648 (1978).

This Court declined to award any attorney fees under Title VII in *Stewart*. Despite the fact that summary judgment was granted for Defendant in that case, the Court cannot say that Stewart's claims were frivolous and unreasonable. Just as in *Stewart*, Young's claims are based on perceived yet unsubstantiated allegations of pervasive discrimination and harassment. The mere fact that a plaintiff is unable to substantiate her claims on summary judgment does not render those claims frivolous or unreasonable.

As to Defendant's allegation that Young's failure to dismiss her claims after this Court's dispositive Order in *Stewart*, it is clear from a comparison of the two cases that, despite similar allegations and causes of action, the two cases are based on individual, particularized fact scenarios. It was not unreasonable or frivolous for Young to proceed with her action based on her own unique fact allegations despite the unfavorable precedent set in *Stewart*. Although Stewart's and Young's claims derive from the same First Amended Complaint, their actions are not identical.

HL & P also cites *Uherek v. Houston Lighting and Power Co.*, 997 F.Supp. 796 (1998), for support that attorney's fees should be awarded. In that case, the Court awarded Defendant $500 in attorney's fees, reasoning that Uherek's lawsuit was utterly lacking in merit. *Id.* at 797. In *Uherek*, the plaintiff filed a lawsuit despite the fact that she had signed a comprehensive release, in exchange for considerable compensation, in which she waived each and every one of the asserted claims. *See Uherek v. Houston Light and Power Co.*, 997 F.Supp. 789, 792 (S.D.Tex. 1998). Such is not the case here. In this case, the Court does not find that Plaintiff's claims are frivolous, unreasonable, or groundless. Accordingly, Defendant's Motion for Attorney's Fees and Costs is **DENIED**.

## VI. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment is **GRANTED** and each and every one of Plaintiff's claims in this action is hereby **DISMISSED WITH PREJUDICE.**[13] Defendant's Motion for Attorney's Fees and Costs is **DENIED**. The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are also **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider or the like, unless justified by a *compelling* showing of new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**

### *FINAL JUDGMENT*

For the reasons set forth in the Court's Order Granting Summary Judgment on this date, Defendant's Motion for Summary Judgment is **GRANTED**, and all of Plaintiff's claims are **DISMISSED WITH PREJUDICE**. Defendant's Motion for Attorney's Fees and Costs is **DENIED**. The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date.

**IT IS SO ORDERED.**

**THIS IS A FINAL JUDGMENT.**

**ALL RELIEF NOT EXPRESSLY GRANTED HEREIN IS DENIED.**

---

**13.** Plaintiff's First Amended Complaint, which was filed before the first lawsuit, *Logue v. Houston Lighting & Power Co.*, was severed into individual actions, may allege more claims than discussed in this Order. However, Plaintiff does not assert or defend all of the claims alleged by the group of plaintiffs in the First Amended Complaint. Thus, only those claims pertaining to Plaintiff Young are addressed in this Order. However, all of the claims possibly asserted on behalf of Young in the First Amended Complaint are dismissed by this Order.