United States Court of Appeals,

Fifth Circuit.

No. 93-3717

Summary Calendar.

Allen T. MARCANTEL, Plaintiff-Appellant,

v.

STATE OF LOUISIANA, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT,
Defendant-Appellee.

Nov. 3, 1994.

Appeal from the United States District Court for the Middle
District of Louisiana.

Before WISDOM, DAVIS and DUHÉ, Circuit Judges.

WISDOM, Circuit Judge:

This is an employment discrimination case that comes within
the three-tiered structure established in *McDonnell Douglas*,[1]
refined in *Burdine*,[2] and recently reexamined in strong majority and
minority opinions in *Hicks*.[3]

The plaintiff/appellant Allan Marcantel, a white male, filed
a complaint alleging that the Louisiana Department of
Transportation (DOTD) discriminated against him in its employment
practices. The district court disagreed and granted summary
judgment for the defendant. We hold that even if we assume that

---

[1]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct.
1817, 36 L.Ed.2d 668 (1973).

[2]*Texas Department of Community Affairs v. Burdine*, 450 U.S.
248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

[3]*St. Mary's Honor Center v. Hicks*, --- U.S. ----, 113 S.Ct.
2742, 125 L.Ed.2d 407 (1993).

1

the plaintiff presented a prima facie case, the DOTD articulated a legitimate, nondiscriminatory reason for its employment decision. Marcantel failed to demonstrate that the explanation was pretextual; failed to carry his burden under any accepted theory of Title VII relief.

I.

In October of 1989 the DOTD successfully settled a civil service complaint with Melvin Villery, an African-American employee, who alleged that he had been passed over for promotion to a supervisory position in Evangeline parish because of his race. In accordance with the written settlement agreement, Villery withdrew his complaint in return for $5,000 and DOTD's promise to appoint him to the next available position of parish maintenance supervisor. Shortly thereafter, DOTD appointed Villery to the then vacant position of Maintenance Supervisor for St. Landry Parish.

DOTD submitted the affidavit of Joseph L. Wax, Deputy Secretary of the Department at the time of the settlement with Villery. Wax reviewed Villery's grievance and concluded that the claim had merit and that filling the vacancy in St. Landry Parish by appointment of Villery would be an appropriate remedy under the approved settlement agreement between the Department and Villery. Before executing the settlement agreement, Wax consulted the United States Department of Justice for review and approval of the settlement, including the fact that the anticipated St. Landry vacancy would not be posted. DOTD was operating then and at all relevant times under a consent decree issued by the district court

2

upon motion of the Department of Justice, to remedy past discriminatory racial practices. The decree allows preferential hiring of specified persons. The Department of Justice approved the settlement, waived the posting of the vacancy, and gave the DOTD credit toward the number of "preferential hires" required by the consent decree. The settlement was also approved by the Civil Service referee in accordance with the rules of the Civil Service Commission.

Marcantel contends that he was better qualified than Villery and that the DOTD should have found a way to settle Villery's grievance rather than deviating from established practices. It must be said that his argument, "settle if you must, but not at my expense," is appealing. But it does not show that the DOTD had racially discriminatory animus toward him.

The plaintiff filed suit, alleging that the DOTD had violated the Fourteenth Amendment, Title VII and 42 U.S.C. sections 1981-1983.[4] The DOTD responded with a motion for summary judgment, arguing that its good faith settlement with Villery could not be considered an independent act of discrimination against Marcantel. The district court agreed with the DOTD and dismissed the plaintiff's action, holding that the "plaintiff lacks any

---

[4]The *McDonnell Douglas* allocation of evidentiary burdens was originally created for Title VII claims but has also been applied by this Court to claims under sections 1981 and 1983. *Lee v. Conecuh County Bd. of Education,* 634 F.2d 959 (5th Cir.1981); *Jenkins v. Caddo-Bossier Association for Retarded Children,* 570 F.2d 1227 (5th Cir.1978); *see also,* Essary, *The Dismantling of McDonnell Douglas v. Green: The High Court Muddies the Evidentiary Waters in Circumstantial Discrimination Cases,* 21 Pepperdine L.Rev. 385, 389 (1994).

significantly probative evidence to support his claim that he was denied the opportunity to be considered for the vacancy because of his race."

## II.

We review *de novo* the district court's order to grant summary judgment.[5] Summary judgment is of course appropriate when there is no disputed issue of material fact.[6]

*McDonnell Douglas*[7] established a three-tiered structured analysis of disparate treatment cases brought by an employee against an employer under Title VII of the Civil Rights Act of 1964. The aggrieved employee must present a prima facie case of discrimination.[8] This establishes a presumption that the employer discriminated against the employee. The burden of production of evidence (and persuasion) then shifts to the employer to produce evidence of nondiscriminatory reasons for his treatment of the employee. If the employer fails to do so, or falls short of the burden of persuasion, the plaintiff prevails.[9] If the employer successfully carries the burden, the plaintiff may show that the employer's reasons "were a pretext for discrimination".[10]

---

[5]*Chauvin v. Tandy Corporation*, 984 F.2d 695, 697 (5th Cir.1993).

[6]Fed.R.Civ.Pro. 56(c); *Celotex Corporation v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

[7]411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

[8]*Id.* at 802, 93 S.Ct. at 1824.

[9]*Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094.

[10]*Id.* at 253, 101 S.Ct. at 1093.

*Burdine* clarified the standard of proof for the second tier of the *McDonnell Douglas* tripartite analysis. In a unanimous decision the Supreme Court held that the employer bears only the burden of producing evidence which explains clearly that the employment decision was not pretextual but was motivated by a legitimate, nondiscriminatory reason, for example, a business judgment. This burden of production "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination".[11] The *Burdine* Court added that "the plaintiff may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence".[12] The language is clear on its face and would seem to allow the plaintiff to prevail by proving discrimination or by proving pretext.

Whether this language was meaningful or "inadvertent,"[13] after a decade of holdings that a finding of pretext was, in itself,

---

[11]*Id.* at 256, 101 S.Ct. at 1095.

[12]*Id.*

[13]In *Hicks,* --- U.S. at ----, 113 S.Ct. at 2753, Justice Scalia characterizes this as "dictum ... [which] must be regarded as an *inadvertence,* to the extent that it describes disproof of the defendant's reason as a totally independent, rather than an ancillary, means of proving unlawful intent". Justice Scalia relies on *Burdine*'s "repeated assurance (indeed in its holding) ... [that] the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff".

proof of discrimination,[14] a number of courts began to hold that "the pretext only" view of *Burdine* was not sufficient to prove discrimination. This Court has been of two minds on the issue.[15]

In *Hicks,* the Supreme Court, in a five to four decision, has settled the issue as of this date:[16] the "pretext-only" doctrine

---

[14]*Hicks,* --- U.S. at ---- - ----, 113 S.Ct. at 2756-57 (Justice Souter dissenting).

[15]*Compare Thornbrough v. Columbos & G.R.R.,* 760 F.2d 633, 639-640, 646-647 (5th Cir.1985) *with Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503, 1508 & n. 6 (5th Cir.1988). *See generally,* Lanctot, *The Defendant Lies and the Plaintiff Loses: the Fallacy of the "Pretext Plus" Rule in Employment Discrimination Cases,* 43 Hastings L.J. 59 (1991); Essary, *The Dismantling of McDonnell Douglas v. Green: The High Court Muddies the Evidentiary Waters in Circumstantial Discrimination Cases,* 21 Pepperdine L.Rev. 385, 402-406 (1994).

[16]A bill amending Title VII on this issue and, thereby, altering the treatment of disparate treatment cases outlined by the Supreme Court in *Hicks* was introduced but not passed in the 1993 session and will presumably be reintroduced in the 1994 session. H.R. 2867, 103rd Cong., 1st Sess. (1993). This bill, titled the "Disparate Treatment Employment Discrimination Amendment of 1993," provides:

> (1) An unlawful employment practice based on disparate treatment is established if—
>
> > (A) the complaining party, by a preponderance of the evidence, proves a prima facie case
> >
> > ... and
> >
> > (B) either—
> >
> > (i) the respondent fails to produce any evidence to rebut such case; or
> >
> > (ii) the respondent clearly articulates ... one or more legitimate nondiscriminatory reasons for the conduct alleged ... and the complaining party demonstrates that each of such reasons is not true, but a pretext for discrimination....

is not enough; even if the employee proves that the employer's nondiscriminatory reason is pretextual, the plaintiff must prove that an unlawful discriminatory intent motivated the employer's action. Under Rule 301 of the Federal Rules of Evidence the presumption created by the plaintiff's presentation of a prima facie case does not shift the burden of proof, the ultimate burden of persuasion which a Title VII plaintiff bears at all times.

## III.

*Hicks* may make the problem of proof more difficult for many Title VII plaintiffs, but in this case the evidence that the employer proffers to show DOTD's action was not pretextual merges with proof that there was no discriminatory animus toward Marcantel.

Specifically, the DOTD has offered undisputed evidence that Villery's promotion was a good faith attempt to settle his claim and remedy past discrimination. Marcantel, in response, argues that he, as a qualified applicant for the job, should not be deprived of an opportunity for promotion because of discrimination perpetrated against Villery. As an innocent employee, he should not bear the negative impact from the DOTD's discriminatory treatment of another employee. The core issue then becomes whether the DOTD, or any employer, can rely on the good faith settlement of a discrimination claim as a legitimate business reason for certain hiring and promotional decisions.

The Tenth Circuit Court of Appeals addressed this issue in an

7

analogous case, *Carey v. U.S. Postal Service.*[17]  In *Carey,* a white

postal worker, David Carey, alleged racial discrimination when a

black postal worker, Omar Nix, was promoted to a supervisory

position that was not advertised or publicly announced.[18]  The

promotion was part of settlement of an EEOC claim by Nix that he

was discriminated against in an earlier promotional decision

because of his race.[19]  The court concluded that the good faith

settlement was a nondiscriminatory reason for the decision to

promote Nix and held that agreements which settle Title VII claims:

> may not be considered independent acts of discrimination,
> [against those not benefited by the agreement] as a matter of
> law, unless there are allegations of bad faith in making the
> agreement, that is, allegations that the agreement was not a
> bona fide attempt to conciliate a claim but rather an attempt
> to bestow unequal employment benefits under the guise of
> remedying discrimination.[20]

The *Carey* court also noted that characterizing a good faith

conciliation agreement as an act of discrimination would subject

employers to conflicting obligations.  Any attempt by an employer

to redress valid claims of discrimination would expose the employer

to liability to other employees who are necessarily impacted by the

remedy.[21]

A decision by the Sixth Circuit Court in *EEOC v. McCall*

---

[17]812 F.2d 621 (10th Cir.1987).

[18]*Id.* at 622-23.

[19]*Id.* at 623.

[20]*Id.* at 624 (citations omitted).

[21]*Id.* at 625 (citing *Dennison v. City of Los Angeles Dept. of Water and Power,* 658 F.2d 694 (9th Cir.1981)).

*Printing Corp.*[22] echoes the concerns of the Tenth Circuit Court of Appeals. In *McCall Printing,* the EEOC, on behalf of a group of black male employees, brought a claim under Title VII based on a conciliation agreement entered into by their employer and a group of female employees which granted the female employees increased seniority rights.[23] The plaintiff characterized the conciliation agreement as an independent act of discrimination against the black male employees.[24] The Sixth Circuit Court, while noting that the agreement conflicted with "the economic interests" of the black male employees, held that the negative impact on other employees was not sufficient to convert a good faith attempt to settle a claim into an act of discrimination.[25] Further, the court noted the consequences if it did consider a good faith settlement violative of Title VII:

> This Court is convinced that the consideration of a conciliation agreement which results in a consent decree as an act of discrimination against employees not benefitted by that agreement would create a situation in which each settlement would spark new rounds of litigation, settlement of claims would be discouraged, and the courts would be continually faced with stale claims.[26]

The Sixth Circuit Court of Appeals, therefore, in accord with the Tenth Circuit Court of Appeals, refused to allow a Title VII plaintiff to base a claim of disparate treatment on a good faith

---

[22]633 F.2d 1232 (6th Cir.1980).

[23]*Id.* at 1234–35.

[24]*Id.* at 1235.

[25]*Id.* at 1237.

[26]*Id.* at 1238.

conciliation agreement.

We conclude that a good faith attempt by an employer to remedy past discrimination by entering a settlement agreement not only successfully meets the challenge of a prima facie case but is not an independent discriminatory act against employees not parties to the agreement but adversely affected by it. Any other decision would discourage settlement and hamper employers in their attempts to redress past discrimination. The settlement with Villery was an attempt by the DOTD to correct discriminatory treatment that Villery, and others, had endured. As such, "the settlement of the complaint and the resultant impact were inherently race neutral."[27]

This decision is further supported by the policies underlying Title VII. The Supreme Court has noted that: "In enacting Title VII, Congress expressed a strong preference for encouraging voluntary settlement of employment discrimination claims."[28] In making these settlements, the interests of other employees unavoidably will be affected. However, "[i]f relief under Title VII can be denied merely because the majority group of employees, who have not suffered discrimination, will be unhappy about it, there will be little hope of correcting the wrongs to which the Act is directed."[29]

---

[27]*Carey,* 812 F.2d at 625.

[28]*Carson v. American Brands, Inc.,* 450 U.S. 79, 88 n. 14, 101 S.Ct. 993, 998 n. 14, 67 L.Ed.2d 59 (1981).

[29]*Franks v. Bowman Transportation Co.,* 424 U.S. 747, 775, 96 S.Ct. 1251, 1269, 47 L.Ed.2d 444 (1976) (quoting *United States v. Bethlehem Steel Corporation,* 446 F.2d 652, 663 (2d Cir.1971)).

This Court has noted previously that some latitude should be given to courts and employers attempting to correct past acts of discrimination. "The law is well settled that relief under Title VII cannot be denied simply because the interests of some employees will be negatively affected...."[30] Rather, "[a]dequate protection of ... rights under Title VII may necessitate ... some adjustment of the rights of ... [other] employees. The Court must be free to deal equitably with conflicting interests of ... employees in order to shape remedies that will most effectively protect and redress the rights of the ... victims of discrimination."[31]

Finally, the plaintiff attempts to rely on the Supreme Court's decision in *Regents of the University of California v. Bakke*[32] to make out his claim of reverse discrimination. The *Bakke* case dealt with an affirmative action program that set aside a specific number of positions for African-Americans.[33] Thus, applicants who were not African-Americans were wholly precluded from competing for those positions, solely on the basis of race. The case before us is distinguishable from the *Bakke* decision: here Marcantel was not precluded from applying for the Highway Maintenance Superintendent position because he was not a member of a specified race. All

---

[30]*EEOC v. International Longshoremen's Association,* 623 F.2d 1054, 1060 (5th Cir.1980), *certiorari denied,* 451 U.S. 917, 101 S.Ct. 1997, 68 L.Ed.2d 310 (1981).

[31]*Vogler v. McCarty, Inc.,* 451 F.2d 1236 (5th Cir.1971).

[32]438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978).

[33]*Id.* at 272-276, 98 S.Ct. at 2738-40.

potential applicants were affected regardless of their race.[34]

We hold today that a good faith settlement of a claim of past discrimination constitutes a legitimate, nondiscriminatory reason for making employment decisions. The DOTD has come forth with undisputed evidence that the promotion of Villery was a result of such a good faith settlement. Wax, acting for DOTD, after evaluating Villery's discrimination claim, decided that the resulting settlement was a fair and equitable solution. The plaintiff, as noted by the district court, has offered no evidence that the agreement was not made in good faith, that is, that the settlement was simply a pretext to hide discriminatory treatment of the plaintiff, Marcantel.[35] Moreover, the plaintiff has been unable to shoulder the inescapable burden of proof borne by every plaintiff. The grant of summary judgment in favor of the DOTD was correct. We AFFIRM.

---

[34]*See Carey,* 812 F.2d at 625, distinguishing the *Bakke* decision on the same basis.

[35]*Marcantel v. Louisiana Department of Transportation and Development,* No. 91-1174-A (M.D.La. Sept. 24, 1993). The only allegation made by the plaintiff regarding the settlement is that the DOTD violated an existing consent decree when it promoted Mr. Villery without statewide posting. As noted by the district court, however, the DOTD sought and received approval of the settlement from the Department of Justice (DOJ), who originally moved for the consent decree, and the Civil Service Commission. *Id.* at 2. The DOJ specifically "waived the posting of the vacancy, and defendant [the DOTD] was given credit towards the number of preferential hires required by the consent decree." *Id.* at 2-3.

12