# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

No. 99-30186

CATHY BRUNSON YOUNG,

Plaintiff-Appellant,

versus

HARRIS HEALTH CARE, INC.,
d/b/a ACADIAN HOSPITAL,

Defendant-Appellee.

Appeal from the United States District Court
for the Middle District of Louisiana
97-CV-270

July 14, 2000

Before POLITZ and DAVIS, Circuit Judges, and RESTANI,[*] District Judge.

POLITZ, Circuit Judge:[**]

Cathy Brunson Young appeals an adverse summary judgment in her

discrimination claims brought under the Age Discrimination in Employment Act

---

[*]Honorable Jane A. Restani, United States Court of International Trade, sitting by designation.

[**]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

and Title VII of the Civil Rights Act of 1964. Finding a genuine issue of material fact as to whether the reasons assigned by Harris Health Care Inc. (HHC) for terminating Young were a pretext for age and/or race discrimination, we reverse the grant of summary judgment and remand.

## BACKGROUND

Young, a Caucasian female, was employed as the Director of Infection Control, Risk Management, Quality Improvement, Utilization Review, and Medical Staffing for Acadian Hospital from March 17, 1994 until her termination on November 20, 1995. At the time of her termination, Young was fifty-one years old. Acadian Hospital is located in Baton Rouge and owned by HHC.

Melvin Harris, a Caucasian male, is the owner, President and Chairman of the Board of HHC. Immediately below Harris in the chain of command is Barry Marks, also a Caucasian male. Both Harris and Marks were over the age of forty at all times relevant to this appeal. Young's immediate supervisor was Craig Johnston, a Caucasian male who, at the time of Young's termination, was twenty-five years old. When Young was hired Johnston was Acadian's Assistant Administrator. In February of 1995, Johnston was promoted to Administrator, replacing Gwen Hebert, a Caucasian female then forty-six years of age. Hebert was reassigned to the position of Chief Operating Officer.

2

After Johnston's promotion, he and Young were involved in several confrontations over various management decisions. As a result of these conflicts, HHC asserts that a telephone conference was held between Harris, Marks, and Johnston in which Harris decided, and the others concurred, that Young's employment should be terminated. Johnston thereafter informed Young. HHC maintains that Young was terminated because she was insubordinate and failed to follow the chain of command and, further, because her assigned tasks were restructured. Young contends that she was fired because Johnston preferred to employ young African-American women. According to Young, Johnston made known his view that Blacks were easier to control and manipulate than older Caucasian employees. Young's work subsequently was divided and three new employees were hired as her replacement. Sherry Anderson, a forty-one year old Caucasian female, became Director of Infection Control; Kimberly Austin, a twenty-six year old Caucasian female, became Director of Risk Management; and Latrenda Sylvester, a twenty-six year old African-American female, became the Director of Quality Improvement, Utilization Review, and Medical Staffing.

Upon her termination, Young filed a complaint with the EEOC. After receiving a right-to-sue letter she filed the instant action against HHC, alleging that she was unlawfully terminated because of her race and age in violation of the Age

Discrimination in Employment Act (ADEA)[1] and Title VII of the Civil Rights Act of 1964, as amended.[2] After extensive discovery, the district court granted HHC's motion for summary judgment, concluding that Young did not present any direct evidence of age and/or reverse-race discrimination. Additionally, the court found that HHC proffered a legitimate, non-discriminatory reason for Young's termination, which she failed to show was pretextual. Young timely appealed.

## ANALYSIS

We review the grant of summary judgment *de novo,* viewing the facts in the light most favorable to Young, the nonmovant.[3] Summary judgment may properly be granted if the record reveals no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.[4] An issue is "genuine" if, on the evidence presented, a reasonable jury could return a verdict for the party opposing the motion.[5] Because employment discrimination actions generally involve uncertain questions of motivation and intent, which typically are proven

---

[1] 29 U.S.C. § 621, *et seq.*

[2] 42 U.S.C. § 2000e, *et seq.*

[3] **Mayberry v. Vought Aircraft Co.,** 55 F.3d 1086 (5th Cir. 1995); **Marcantel v. Louisiana Dep't of Transp. and Dev.,** 37 F.3d 197 (5th Cir. 1994).

[4] FED. R. CIV. P. 56(c); **Celotex Corp. v. Catrett,** 477 U.S. 317 (1986).

[5] **Anderson v. Liberty Lobby, Inc.,** 477 U.S. 242 (1986).

only through circumstantial evidence, the summary judgment process is not usually an available resolution.[6]

Title VII proscribes an employer from "discharg[ing] any individual... because of such individual's race, color, religion, sex, or national origin,"[7] while the ADEA prohibits an employer from "discharg[ing] any individual... because of such individual's age."[8] The ADEA's protections apply to persons who are at least forty years old.[9] Employment discrimination claims brought under either statute may be established by presenting either direct evidence of an intent to discriminate or circumstantial evidence sufficient to meet the test detailed in **McDonnell Douglas Corp. v. Green.**[10]

*A. Direct Evidence:*

When a plaintiff presents direct evidence that discriminatory animus motivated or played a substantial role in the employer's decision to terminate, the burden of proof shifts to the employer to show, by a preponderance of the evidence,

---

[6]**Honore v. Douglas,** 833 F.2d 565 (5th Cir. 1987); **Thornbrough v. Columbus and Greenville R. Co.,** 760 F.2d 633 (5th Cir. 1985).

[7]42 U.S.C. § 2000e-2(a)(1) (1994).

[8]29 U.S.C. § 623(a)(1) (1994).

[9]29 U.S.C. § 631(a).

[10]411 U.S. 792 (1973). *See* **Reeves v. Sanderson Plumbing Prods., Inc.,** 120 S. Ct. 2097 (2000); **Bienkowski v. American Airlines, Inc.,** 851 F.2d 1503 (5th Cir. 1988).

that it would have taken the same action absent the unlawful factor.[11]  "Direct evidence is evidence which, if believed, proves the fact without inference or presumption."[12]  Young contends that the following comments by Johnston are direct evidence of his intent to discriminate on the basis of her age: calling her an "old bulldog"; saying he would "never hire anybody as old" as forty; calling her "menopausal"; asking her "do all women your age act like this?"; telling her that she was doing her job too well because she was older; and stating that if she were younger she "wouldn't take her job so seriously."  We agree with the district court that these comments, if believed by the trier of fact, while clearly improper, are not sufficient direct evidence that Young was fired because of her age.

In order to shift the burden of proof to HHC under **Price Waterhouse**, Young must do more than simply establish that the comments evince a discriminatory bias. These comments, if spoken, would demonstrate Johnston's bias towards older persons, particularly older women.  Young, however, also must show that Johnston's discriminatory beliefs actually motivated his decision to recommend

---

[11]**Price Waterhouse v. Hopkins,** 490 U.S. 228 (1989); **Brown v. East Miss. Elec. Power Ass'n,** 989 F.2d 858 (5th Cir. 1993).

[12]**Brown,** 989 F.2d at 861.

6

that she be discharged.[13] During her deposition, Young could not recall when most of these comments were made and, thus, offers no evidence that they were made in connection with the decision to terminate her employment.[14] We cannot say that these comments, standing alone, provide direct evidence of such.[15]

Likewise, we conclude that Young has failed to proffer direct evidence of reverse-race discrimination. Johnston's alleged comments that: "whites can't handle blacks"; "it's easier to get young black females to listen"; "no doctor, especially a black one, is going to dictate to Melvin Harris how to run his hospital"; and calling Acadian Hospital "Acadian Plantation," all reflect a bias towards African-Americans. Moreover, as with the age discrimination claim, there is no direct evidence linking these comments with the adverse employment decision.

---

[13]**Haas v. ADVO Systems, Inc.,** 168 F.3d 732 (5th Cir. 1999) (statement by employer to plaintiff that his only concern about hiring plaintiff was plaintiff's age was not direct evidence of age discrimination); **Mooney v. Aramco Serv. Co.,** 54 F.3d 1207 (5th Cir. 1995); **Waggoner v. City of Garland,** 987 F.2d 1160 (5th Cir. 1993) (statement that a younger person could do faster work and making a derogatory reference to plaintiff not direct evidence of age discrimination).

[14]**Price Waterhouse,** 490 U.S. at 235 (offending comments about plaintiff were made during a meeting evaluating her chances of becoming partner); **Turner v. North American Rubber, Inc.,** 979 F.2d 55 (5th Cir. 1992) (discriminatory statements not direct evidence because plaintiff failed to show that they were related to contested employment decision).

[15]In reaching this conclusion, we reject HHC's assertion that any alleged discriminatory bias held by Johnston cannot be imputed to HHC because Johnston did not make the actual decision to fire Young. The record reflects that although Harris was the ultimate decision-maker, he and Marks, who concurred in the decision, clearly were influenced by Johnston's recommendations. Thus, we cannot say that the decision was untainted by Johnston's discriminatory bias if, in fact, Johnston possessed such animus. **Haas,** 168 F.3d at 734; **Brown,** 989 F.2d at 861-62.

Because the jury necessarily would be required to draw multiple inferences in order to conclude that, based on these comments, Young was terminated because she is White, the district court properly held that she did not tender sufficient direct evidence of race discrimination.

## B. Indirect Evidence:

Young nonetheless may succeed in her claim of age and race discrimination under the burden shifting framework established in **McDonnell Douglas** and **Burdine.** Under Title VII, a plaintiff first must present prima facie evidence of discrimination, thereby establishing a presumption that the employer acted with a discriminatory motive in the challenged employment decision.[16] Accordingly, Young must show that she: (1) is a member of a protected class; (2) was qualified for the position she held; (3) was subject to an adverse employment action; and (4) was either replaced by someone outside the protected class or treated differently from employees outside her protected class.[17] The elements are essentially the same for an action brought under the ADEA except that for the fourth element, the plaintiff must show that she was replaced by a person substantially younger.[18] We

---

[16]**McDonnell Douglas Corp.,** 411 U.S. at 802; **Burdine,** 450 U.S. at 253-54.

[17]**St. Mary's Honor Ctr. v. Hicks,** 509 U.S. 502 (1993).

[18]**O'Connor v. Consolidated Coin Caterers Corp,** 517 U.S. 308 (1996); **Bodenheimer v. PPG Indus., Inc.,** 5 F.3d 955 (5th Cir. 1993).

agree with the district court that Young presented a prima facie case of age and race discrimination. Although HHC contends that Young was not qualified for her position because she was insubordinate, this claim is without merit. As this court has stated previously, to establish the second prong of a prima facie case, a plaintiff need only show that she continued to possess the qualifications necessary to perform the essential functions of her job.[19]

Similarly, we reject HHC's claim that Young cannot prove the fourth element of her prima facie case. HHC contends that Young was not replaced because her job was eliminated and the duties were divided into three new positions. This contention lacks merit. A restructuring of Young's position could have been accomplished without firing her. As noted, Latrenda Sylvester, a twenty-six year old female, became the Director of Quality Improvement, Utilization Review, and Medical Staffing. Kimberly Austin, a twenty-six year old female, was given the position of Director of Infection Control, and Sherry Anderson, a forty-one year old female, became the Director of Risk Management. All of these women are substantially younger than Young and a plaintiff "need only make a very minimal showing" to establish her prima facie case.[20] We conclude

---

[19]**Bienkowski,** 851 F.2d at 1506.

[20]**Guthrie v. Tifco Indus.,** 941 F.2d 374, 377 (5th Cir. 1991).

that Young produced evidence sufficient to create the presumption that HHC terminated her because of her age.  Further, viewing the facts in the light most favorable to Young, we likewise conclude that Young established a prima facie case of reverse-race discrimination.  Sylvester, an African-American, assumed the bulk of Young's responsibilities and, of Young's three replacements, was hired first.  Although Anderson and Austin are Caucasian, the record reflects that no African-Americans applied for either job and, accordingly, Johnston did not have the opportunity to hire Black employees to fill those positions.

Once the plaintiff establishes her prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its action.[21]  This explanation must be clear and reasonably specific.[22]  In the instant case, HHC avers that Young was fired because she was insubordinate and failed to follow the chain of command.  Young claims that these generalized, conclusionary statements are insufficient to rebut the presumption of discrimination.  We are not persuaded.  To satisfy its burden, an employer "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the

---

[21]**McDonnell Douglas Corp.,** 411 U.S. at 802.

[22]**Burdine,** 450 U.S. at 258.

employment decision had not been motivated by discriminatory animus."[23]  In the case at bar, it is undisputed that Johnston was the person directly above Young in Acadian Hospital's chain of command.  To support its proffered explanation, HHC offered the deposition testimony of Vertiz Daliz, a charge nurse at Acadian who stated that she once witnessed Johnston and Young outside "yelling and screaming" at each other about an issue regarding Medicare patients.  Adrian Jordan, another Acadian employee, testified that she witnessed Young "question" Johnston's authority as Administrator.  Indeed, Young admitted in her deposition that she often had disagreements with Johnston regarding hospital procedures, and that she reported to others within the chain of command instead of reporting to Johnston.  As HHC bears only the burden of production, not ultimate persuasion, we find HHC's proffered explanation to be a legitimate business reason for terminating Young's employment.[24]

Because we conclude that on the record before us HHC successfully rebutted the presumption that it discriminated against Young, to survive summary judgment she must present evidence sufficient to raise triable issue of fact as to whether

---

[23]**Burdine,** 450 U.S. at 257.

[24]**Haas,** 168 F.3d at 733; **Bodenheimer,** 5 F.3d at 957-58.

HHC's stated reasons are merely a pretext for unlawful discrimination.[25] This may be accomplished "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."[26] In determining whether Young has produced sufficient evidence to preclude summary judgment, we consider all of the record evidence, including that offered to establish the prima facie case.[27]

In addition to the alleged discriminatory statements made by Johnston, which Johnston denies making, the record reflects that other Acadian employees regarded Johnston as a racist. Further, contrary to HHC's assertion that Young "had difficulty interacting with other HHC employees" and that she was "confrontational," both Daliz and Jordan testified unequivocally that Young got along well with the other employees. Similarly, Dr. Stan Mays, Acadian's Medical Director, testified that he never heard Young referred to as "insubordinate." Jordan, an African-American then aged twenty-seven, testified that she and Johnston "argued," and Daliz testified that she remembered Johnston having

---

[25]**McDonnell Douglas Corp.,** 411 U.S. at 805; **Burdine,** 450 U.S. at 256.

[26]**Burdine,** 450 U.S. at 256.

[27]**Reeves,** 120 S. Ct. at 2106 (quoting **Burdine,** 450 U.S. at 255, n.10); **Haas,** 168 F.3d at 733.

12

"screaming matches" with Director of Nursing Gloria Mays, also African-American and then aged thirty. Neither Jordan nor Mays were fired because of their "insubordination." We also find compelling the fact that Young's employment file contained no written documentation of her alleged acts of insubordination, despite HHC's claims that she "often" violated the chain of command and "continued to arrive late for work" although she was "repeatedly instructed" to arrive on time. Indeed, when Young attempted to resign in August of 1995, a mere three months before she was fired, it was Johnston who persuaded her to stay. On the other side of the scales of justice we find that in her letter of resignation, Young stated, "I do not think that Administrations [sic] decision not to support me was personally motivated." Additionally, HHC produced affidavits from Harris, Marks, and Johnston, all of which state that Young never complained to any of them about Johnston's alleged discriminatory remarks. Based on this evidence, we must conclude that there is a material factual dispute as to whether Johnston was motivated either by age or race in his employment decision and whether HHC's reasons are pretextual, factual questions effectively precluding summary judgment.[28] Resolution of these issues necessarily requires credibility

---

[28]Contrary to HHC's assertion, the fact that Harris, Marks, and Hebert are all Caucasian and over forty years old, while persuasive, does not conclusively establish that Young was not terminated because of her age and/or race. **Thornbrough v. Columbus and Greenville R. Co.,** 760 F.2d 633,

determinations that are more appropriately left to the jury at trial. Such is not fit grist for the summary judgment mill. In reaching this decision, we express no outcome determinative opinion on the merits of the case, which should now proceed as any case advancing to trial.

Accordingly, we REVERSE the summary judgment appealed, and REMAND for further proceedings consistent herewith.

---

646 n.20 (5th Cir. 1985), *overruled on other grounds by* **St. Mary's Honor Ctr. v. Hicks,** 509 U.S. 502 (1993).