Edward Bernard CROSBY,
Jr., Plaintiff,

v.

DALLAS COUNTY, TEXAS, Defendant.

No. CIV.A. 3:99CV2273P.

United States District Court,
N.D. Texas,
Dallas Division.

April 17, 2001.

Cheryl B. Wattley, Wattley & Plumlee, Dallas, TX, for plaintiff.

Dolena T. Westergard, Dallas County Dist. Attorney's Office, Dallas, TX, for defendant.

## *MEMORANDUM OPINION AND ORDER*

SOLIS, District Judge.

Now before the Court is Defendant's Motion for Summary Judgment, with supporting brief and appendix, filed December 1, 2000; Plaintiff's Response to the summary judgment motion, filed February 2, 2001, and Defendant's reply brief, filed February 26, 2001. For the reasons set forth below, the Court concludes that Defendant's Motion for Summary Judgment should be GRANTED as to each of Plaintiff's claims.

---

1. Though the sexual relationship was consensual, Plaintiff was deemed to have engaged in "conduct unbecoming an officer." Plf. Br. at 1.

## BACKGROUND

Plaintiff Edward Bernard Crosby, Jr. ("Plaintiff" or "Crosby") brings this action against his former employer, the Dallas County Sheriff's Department ("Defendant" or the "County"), alleging racial discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and a violation of his procedural due process rights under 42 U.S.C. § 1983.

The following are the relevant facts of the case, which are essentially undisputed. Plaintiff Crosby, an African–American, was initially hired by the Dallas County Sheriff's Department on September 16, 1976. On October 15, 1997, four allegations of wrongdoing were made against Crosby, including that he (1) displayed conduct unbecoming an officer by sexually harassing female employees; (2) was derelict in his duties by allowing employees to leave early while still showing them on duty; (3) was involved in a sexual relationship with a subordinate; and (4) disobeyed a direct order not to discuss his case with anyone other than a representative of Internal Affairs. Although the first two allegations were not sustained, the allegations that Crosby engaged in a sexual relationship with a female subordinate [1] and that he disobeyed a direct order were sustained. As a result of these findings, Crosby was suspended without pay for thirty (30) days, demoted to the rank of Deputy I,[2] and placed on performance probation for ninety (90) days.

During Crosby's probationary period, he was determined to have fallen asleep and snored during court proceedings while serving as a bailiff in a Dallas County civil district court. As a result, Crosby's employment with the Dallas County Sheriff's

---

2. To remove an officer from a supervisory position, he must be demoted to a Deputy I rank. All of the ranks above Deputy I have supervisory responsibilities. Def. Aff. at 260.

Department was terminated on May 19, 1998. Plaintiff appealed the demotion, suspension, and termination to the Sheriff's Civil Service Commission, which upheld each of the disciplinary actions. On October 5, 1999, Crosby filed the current action, alleging he was demoted and terminated because of his race in violation of Title VII, and his procedural due process rights were violated under 42 U.S.C. § 1983.

Each of the County's grounds for summary judgment are addressed below.

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). The moving party bears the burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial, and of identifying those portions of the record that demonstrate such an absence. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The party defending against the motion for summary judgment cannot defeat the motion unless he provides specific facts that show the case presents a genuine issue of material fact, such that a reasonable jury might return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *Id.* at 248–50, 106 S.Ct. 2505; *Abbott v. Equity Group, Inc.*, 2 F.3d 613, 619 (5th Cir.1993). In other words, conclusory statements, speculation and unsubstantiated assertions will not suffice to defeat a motion for summary judgment. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir.1996) (en banc). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case, and on which he bears the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548.

Finally, the Court has no duty to search the record for triable issues. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 403 (6th Cir.1992). The Court need only rely on the portions of submitted documents to which the non-moving party directs. *Id.*

### II. TITLE VII CLAIMS

#### A. Legal Standard Under Title VII

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of [his] ... race." 42 U.S.C. § 2000e–2(a)(1). The U.S. Supreme Court originally set out the framework for analyzing Title VII employ-

ment discrimination claims in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and elaborated upon this framework in *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Under the *McDonnell Douglas/St. Mary's* scheme, Crosby must first establish a prima facie case of discrimination. *See St. Mary's*, 509 U.S. at 506, 113 S.Ct. 2742. Such a prima facie case is established if Crosby provides evidence that he: (1) was a member of a protected group; (2) was qualified for his position; (3) suffered an adverse employment action; and (4) was replaced by a similarly qualified individual outside of the protected group. *See Ward v. Bechtel Corp.*, 102 F.3d 199, 202 (5th Cir.1997).

If Crosby establishes a prima facie case, he will have raised a rebuttable presumption of discrimination and shifted the burden to the County to articulate a legitimate, non-discriminatory reason for his termination. *See St. Mary's*, 509 U.S. at 506, 113 S.Ct. 2742. If the County satisfies this burden of production, Crosby must present evidence that the County's proffered reason is a pretext for discrimination and that his termination was in fact informed by discriminatory motives. *See id.* at 507, 113 S.Ct. 2742; *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Thus, the County's successful rebuttal requires Crosby to present more specific evidence supporting his allegation of discriminatory intent. *See Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir.1996). The ultimate burden of persuasion at trial, of course, rests squarely upon Crosby. *St. Mary's*, 509 U.S. at 508, 113 S.Ct. 2742; *Marcantel v. Louisi-ana Dep't of Transp. & Dev.*, 37 F.3d 197, 200 (5th Cir.1994).

## B. Race Discrimination Claims

### 1. *Prima Facie Case*

█ As set out above, for Crosby to articulate a prima facie case of race discrimination as to his demotion and discharge claims, he must show that he: (i) belongs to a protected class, i.e. he was African–American; (ii) was qualified for his position; (iii) suffered an adverse employment action; and (iv) was replaced by someone outside of the protected class. *See Ward v. Bechtel Corp.*, 102 F.3d 199, 202 (5th Cir.1997). In some cases, however, a plaintiff may establish a prima facie case by relying on proof of disparate treatment when an employee suffers an adverse employment action for what appears to be good cause. To establish a claim of disparate treatment, a plaintiff must show that (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) non-protected class employees were not treated similarly. *See Daigle v. Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995).

The County does not dispute that Crosby has satisfied the first two elements of a disparate treatment claim. Rather, the County focuses on the third element of the prima facie case, arguing that Plaintiff has produced no evidence that the County treated similarly situated employees outside a protected class more favorably. Def. Br. at 5, 7; Def. Reply at 6. In response, Crosby asserts that white males, namely Officer Kyle Smith, Sergeant Douglas E. Riggins, and Sergeant James Eldon Jackson, who were involved in similar conduct to that of Plaintiff were punished less severely.[3] Plf. Br. at 17. In

---

**3.** The Court will address Plaintiff's examples of disparate treatment in more detail later in this Opinion.

addition, Crosby presents evidence alleging that white employees who have fallen asleep on the job, as Plaintiff did, are disciplined less severely than African–American employees who have committed the same offense. Plf. Br. at 18; Plf.App. at 174–75.

■ The Court acknowledges that only a "very minimal showing" is required for Crosby to satisfy the essential elements of his prima facie case. *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir.1996). Thus, the Court declines to hold at the summary judgment stage that Crosby has failed to establish a prima facie case. The Court next analyzes whether the County has a legitimate, non-discriminatory reason and whether that reason is pretextual.

### 2. *Non–Discriminatory Reason and Pretext*

Having established a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for Crosby's demotion and termination. If the defendant does so, the burden shifts back to the plaintiff to produce evidence raising a material fact issue whether the defendant's reasons are mere pretext.

### a. *Crosby's Demotion*

■ To satisfy its burden of production, the County offers evidence that it demoted Crosby following an investigation by the Internal Affairs section of the Dallas County Sheriff's Department. Specifically, the County asserts that it demoted Crosby because of his sexual relationship with a subordinate, which amounted to

conduct unbecoming an officer, and because he disobeyed a direct order not to discuss the investigation with anyone other than a representative of Internal Affairs. Def.App. at 14.

Crosby admits that he had a two-year sexual relationship with a female Detention Services Officer ("DSO"), Debra Freeman, who was under his command. Plf. Br. at 4, n. 4. He also acknowledges that he discussed the Internal Affairs investigation with Freeman, in violation of a direct order, and that Crosby and Freeman agreed to deny the relationship. Def.App. at 46. Thus, the Court finds that the County has met its burden by producing evidence that it demoted Crosby's employment for a legitimate, non-discriminatory reason.

■ Because the County satisfied its burden of production, Crosby is now obligated to produce sufficient evidence to permit a reasonable jury to find that the County's non-discriminatory explanation for Crosby's demotion is pretextual. Plaintiff argues that the County's reason for demoting him[4] is pretextual because similar conduct on the part of other employees was not disciplined in the same manner. To raise an inference of discrimination, the plaintiff may compare his treatment to that of nearly identical, similarly-situated individuals. *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995). In addition, other employees' acts of misconduct must be of "comparable seriousness" to that of the plaintiff. *Warfield v. Lebanon Correctional Inst.*, 181 F.3d 723, 730 (6th Cir.1999).

First, Plaintiff asserts that two white employees, Officer Kyle Smith[5] and his

---

4. Namely, the sustained allegations that he had a sexual affair with a subordinate for two years and disobeyed a direct order not to

discuss an Internal Affairs investigation with anyone outside of Internal Affairs.

5. Throughout the summary judgment evidence, Kyle Smith is referred to as a Deputy

supervisor Sgt. Wygant, were not subject to the same disciplinary action as Plaintiff despite "the development or developing of a personal relationship" between the two. Plf. Br. at 17; Plf.App. at 96. In fact, Plaintiff alleges that the Sheriff's Department, through Captain Jane Sawyer, "facilitated" a relationship between Sgt. Wygant and Detective Smith. Plf. Br. at 17. Such allegations, however, do not present the entire story. The summary judgment evidence reveals that Sgt. Wygant and Detective Smith met with Captain Sawyer to relay that the two "were starting to see each other" and "thought is was inappropriate that they remain working one under the other's command." At Sgt. Wygant and Officer Smith's request, the Department transferred Officer Smith to another facility. Def. Supp.App., Exh. 2. There is no evidence that a sexual relationship existed between the two, when one was a supervisor over the other, before they both went to Captain Sawyer to request the transfer. Def. Supp.App., Exh. 2. Moreover, Plaintiff acknowledges that Executive Chief Deputy Larry Forsyth, who disciplined Crosby, was not aware of any personal relationship that may have developed between Sgt. Wygant and Officer Smith. Def. Supp.App., Exh. 1, at 21.

Based on the summary judgment record, it is clear that the incident involving Sgt. Wygant and Officer Smith differs greatly from the facts in Plaintiff's case. Plaintiff continued in a sexual relationship with a female subordinate in secret for two

years. In addition, Plaintiff disobeyed a direct order not to discuss an Internal Affairs investigation with anyone outside of Internal Affairs. Neither Sgt. Wygant nor Detective Smith disobeyed such an order. The Wygant–Smith example is simply not sufficient to raise a reasonable inference of discrimination so that a jury could conclude from the summary judgment evidence that the County disciplined its employees in a discriminatory manner based on race.

Second, Crosby alleges that he was disciplined "significantly more harshly" than two white male officers who, like him, were deemed to have engaged in conduct unbecoming an officer. Both Sgt. Douglas E. Riggins and Sgt. James Eldon Jackson were found to have violated the County's sexual harassment policy.[6] Sgt. Riggins received a written reprimand and ninety (90) days performance probation. Def. App. at 183. Sgt. James Eldon Jackson was demoted to the rank of Deputy, placed on ninety (90) days performance probation, and placed in a behavioral cause program. Def.App. at 157–58. The distinction between these two officers and Plaintiff is that Riggins and Jackson were disciplined for sexual harassment. Plaintiff was charged with disobeying a direct order and with having a sexual relationship with a female subordinate for two years. Again, the facts in Plaintiff's case are distinct from those in the Riggins and Jackson examples.

---

and at times a Detective. *See* Plf.App. at 95, Def. Supp.App., Exh. 1, at 39. In light of this inconsistency, the Court will refer to Kyle Smith as an "Officer".

6. Sgt. Riggins was found to have "willfully engaged in conduct which constitutes conduct unbecoming an officer and supervisor by directing unwanted attention toward DSO Amy Phillips that interfered with the subordinate officer's capacity to perform her duties by

creating an intimidating and offensive work environment from August to November 1990." Def.App. at 183. Sgt. Jackson was found to have "willfully engaged in conduct which constitutes conduct unbecoming an officer and supervisor when [he] created an intimidating and hostile work environment by sexually harassing three female DSOs." Def. App. at 157.

Finally, Crosby states that, prior to his situation, no other employee had been demoted two levels, while also receiving leave without pay and 90 days performance probation. Plf. Br. at 17. However, in 1998, Assistant Deputy Chief David Stromile was terminated by the Dallas County Sheriff's Department as a consequence of a consensual, sexual relationship with a subordinate.[7] Plf.App. at 11–12. In addition, since Plaintiff's incident, Captain Tim Randall was found to have used a racial slur and demoted *three* levels to the rank of Deputy I and placed on 90 days performance probation. Based on this evidence, the Court is unpersuaded by Crosby's assertion that the severity of his punishment was unprecedented or unjustified.

■ A plaintiff proves discriminatory intent by demonstrating that other like or similarly situated employees who are not in the protected class were not disciplined in the same manner even though they were known by the employer to have committed the *same* conduct. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 278–84, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976) (involving "similar" conduct); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir.1995) (circumstances must be "nearly identical"); *Barnes v. Yellow Freight Sys., Inc.*, 778 F.2d 1096, 1100 (5th Cir.1985) (involving "essentially identical" conduct). In each of the examples cited by Plaintiff for disparate treatment, the disciplinary action taken against the individual was different. However, the County has demonstrated that in each case the punishment was tailored to fit the distinct

conduct involved. Given the varying circumstances and charges involved in each incident, the Court finds that the examples of disciplinary action cited by Plaintiff are not sufficiently similar to raise an inference that Chief Forsyth punished Crosby more harshly than other employees because of his race. Accordingly, Defendant's summary judgment motion is granted as to this claim.

b. *Crosby's Termination*

■ The County asserts that it fired Crosby after a judge in the Dallas County civil district court complained that Crosby had fallen asleep and snored during court proceedings. Def.App. at 2; Def. Reply at 7. In response, Plaintiff does not dispute the incident occurred. Instead, similar to his demotion claim, Crosby argues that he was punished more harshly than his white counterparts. Specifically, Crosby points to Defendant's Exhibit No. 8 to illustrate that African–American employees who have fallen asleep on duty are punished more harshly than white employees who have done the same. Indeed, based on the cursory information provided in the Exhibit, it appears that ten of the fifteen African–American employees determined to have fallen asleep on duty were terminated.[8] Yet, of the seven white employees found to be asleep on duty, none were terminated. Plf.App. at 174–75.

The Exhibit, however, is sketchy at best, providing only the names of the employees who have fallen asleep on duty from 1995 to 1999, the race and gender of each em-

---

7. Chief Stromile was found to "have been involved in a sexual relationship with subordinate staff which has adversely effected the operation of the Intake/Release Division." Plf.App. at 11. As a result, Chief Stromile was terminated. Plf.App. at 12.

8. Plaintiff is included in the number of African–American employees terminated. Plf. App. at 174–75. In his Brief, however, Crosby states that eleven of sixteen African–American employees were terminated. It appears that Plaintiff may have counted Edward Neroes twice as his termination is listed twice in the Exhibit. Plf.App. at 174.

ployee, and the disciplinary action taken. Plf.App. at 174–75. The Court is not provided with any information on the circumstances surrounding each employees' termination or whether the employees were similarly situated, i.e. whether the discharged employees were on 90 days performance probation like Crosby at the time they fell asleep on the job.

Similar to his demotion claim, Crosby may raise an inference of discrimination by comparing his treatment to that of nearly identical, similarly-situated individuals. *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir.1995). Here, Plaintiff has not provided the Court with sufficient evidence that the white employees deemed to have fallen asleep on duty were similarly situated to Plaintiff. The Court is unable to discern whether the white employees were also on 90 days performance probation at the time of their offense or whether other circumstances were present. Without more, Plaintiff has not presented sufficient evidence that he was treated more harshly than similarly situated employees outside of the protected class and under nearly identical circumstances. *McDonald*, 427 U.S. at 278–84, 96 S.Ct. 2574; *Mayberry*, 55 F.3d at 1090; *Barnes*, 778 F.2d at 1100. Accordingly, Defendant's motion for summary judgment is granted as to Crosby's discrimination claims.

## III. Section 1983 Procedural Due Process Claims

Plaintiff asserts that Defendant is subject to liability under § 1983 because Defendant violated his procedural due process rights under the Fourteenth Amendment. Specifically, Crosby asserts that the County violated his rights by not providing "adequate notice of the allegation that his consensual relationship disrupted the workplace and consequent-

ly Plaintiff did not have sufficient opportunity to respond." Plf. Br. at 9.

In *Cleveland Bd. of Educ. v. Loudermill*, the U.S. Supreme Court explained that a driving principal of due process is that prior to a deprivation of life, liberty or property, an individual be provided notice and an opportunity for a hearing. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The pre-disciplinary hearing need not, however, be elaborate. *Loudermill*, 105 S.Ct. at 1495 (citations omitted). "In general, 'something less than' a full evidentiary hearing is sufficient prior to adverse administrative action." *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 343, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). If a governmental employer provides a full post-discipline hearing, as it did in this case, pre-discipline due process is limited. *Loudermill*, 105 S.Ct. at 1495. In such circumstances, before disciplining an employee, the employer need only provide the employee with written or oral notice of the charges raised against him, explain to the employee the nature of the evidence of those charges, and afford the employee an opportunity to respond. *Browning v. City of Odessa, Texas*, 990 F.2d 842, 844 (5th Cir.1993).

In the present case, Plaintiff argues that he was not given adequate notice and an opportunity to address whether his sexual relationship with a subordinate *had an adverse impact on the workplace.* However, the summary judgment record indicates that Crosby was disciplined only for having a sexual relationship with a subordinate, not whether that relationship impacted the workplace. Chief Forsyth states that he determined, based on his independent review of the Internal Affairs Department file, that Crosby's sexual involvement with a subordinate was conduct unbecoming an officer in violation of Sec-

tions 4.02 and 4.03 of the Sheriff's Department Code of Conduct.[9] Def.App. at 12; Plf.App. at 63, 65, 69, 70. Section 4.02 provides that "Deputies and Detention Service Officers shall not engage in any conduct which constitutes conduct unbecoming an officer or neglect of duty." Def. App. at 12. Section 4.03 states that "No employee shall engage in any personal conduct or act which, if brought to the attention of the public, could result in justified unfavorable criticism of that individual or the Department." Def.App. at 12. Neither of these provisions of the Sheriff's Department Code of Conduct requires that such conduct must adversely affect the workplace, nor is there any evidence that such an adverse effect on the workplace was the basis, much less the "pivotal issue," [10] in Chief Forsyth's determination that Crosby had violated Sections 4.02 and 4.03.

Even if Chief Forsyth had considered whether Crosby's sexual relationship with a subordinate had adversely affected the workplace, Crosby was given adequate notice that such an issue may exist before his full, post-disciplinary hearing before the Civil Service Commission. Plaintiff was given a copy of the Internal Affairs Department file prior to his Civil Service Commission hearing. Plf.App. at 4. In that file, Internal Affairs Detective Kathleen Williams clearly states in the Findings section that "in this particular case, it appears that [Crosby's sexual] relationship had a negative effect on the operation of the North Tower, 2nd Watch and that Lt. Crosby used his position to intimidate lower ranking officers under his supervision." Def.App. at 25. Based on this evidence, Plaintiff cannot argue that he failed to receive "any suggestion" that disruption of the workplace may have been considered. Plf. Br. at 11.

As discussed previously, where a governmental employer provides a full post-discipline hearing, as it did in this case, pre-discipline due process is limited. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). The employer need only provide the employee with written or oral notice of the charges raised against him, explain to the employee the nature of the evidence of those charges, and afford the employee an opportunity to respond. *Browning v. City of Odessa, Texas*, 990 F.2d 842, 844 (5th Cir.1993). Despite Plaintiff arguments, the summary judgment evidence indicates that Crosby received notice of the charges raised against him, was explained the nature of those charges, and was afforded an opportunity to respond in both a disciplinary hearing before his demotion and in his full, post-discipline hearing before the Civil Service Commission.[11] In fact, Plaintiff was represented by his current counsel at the Civil Service Commission hearing. For these

9. In addition to having disobeyed a direct order not to discuss the Internal Affairs investigation with anyone other than a representative of Internal Affairs. Def.App. at 12.

10. Plaintiff makes the unsubstantiated, conclusory allegation that "the disruption of the workplace ... was the pivotal issue for determination." Plf. Br. at 11.

11. Plaintiff also makes a brief argument that the direct order informing Crosby not to discuss any information pertaining to the ongoing Internal Affairs investigation was not sufficiently specific to lead to a violation. The summary judgment record reveals, however, that Crosby contacted four female employees, Debra Freeman, Sheryl Murray, Ella Washington, and Tracie Goss, in violation of the direct order. Plf.App. at 26; Def.App. at 165. In fact, Crosby admitted that he violated the direct order and stated "I regret violating this order." Upon considering the evidence, the Court concludes that Plaintiff's claim regarding the direct order is without merit and should also be dismissed as a matter of law.

reasons, the Court concludes that Defendant's pre-disciplinary actions did not deprive Plaintiff of his procedural due process rights.

In light of the determination that Plaintiff has failed to offer or show any evidence that he was denied adequate pre-disciplinary notice and an opportunity to respond, or that he was denied a full, post-disciplinary hearing, the Court concludes that Plaintiff has failed to sufficiently assert a violation of his procedural due process in his discharge and termination. Accordingly, summary judgment is granted in favor of Defendant as to this claim.

## CONCLUSION

Upon careful review of the parties' arguments, the summary judgment record, and the relevant law, the Court concludes that Plaintiff Edward Bernard Crosby, Jr. has failed to demonstrate a material dispute of fact as to his discrimination and due process claims. Accordingly, Defendant's motion for summary judgment is hereby GRANTED as to each of Crosby's claims.

**So Ordered.**